36  223<br>143  191

## ARTHUR THORNTON v. T. K. HOOK.

CROSS EXAMINATION.—It is not always easy to determine the precise point beyond which a cross examination should not be allowed to proceed. The general rules are that a witness cannot be cross examined except as to facts and circumstances connected with matters testified to by him on his direct examination, and that a party who has not yet opened his own case cannot do so by a cross examination of his adversary's witness.

IDEM.—When both sides of a case are founded upon the same or cognate facts, the cross examination must be left to the discretion of the Judge, and his ruling cannot be regarded as erroneous.

A FRAUDULENT SALE AS TO CREDITORS.—If a sale of property is made which is fraudulent as to creditors of the vendor, and the vendee then sells to a third person, in whose hands the goods are attached by a creditor of the first vendor, and the creditor, in an action against the Sheriff, attacks the sale as a fraud on creditors, this admits the validity of the sales as between the vendors and vendees, and the creditor must show that the second vendee was a party to the fraud. The burden of proving the fraud is on him; and the questions whether the second vendee had notice of the fraud of the first sale, or was an innocent purchaser, or whether the second vendee paid a valuable consideration, have no application to the case. Such questions apply only to a case where property is purchased by such fraudulent representations as will vitiate the sale between the vendor and vendee.

IDEM.—The Statute of Frauds does not annul a sale in favor of creditors solely upon the ground that it was not founded on a valuable consideration.

IDEM.—A creditor who attacks a sale on the ground of fraud as to him,

admits the validity of the sale between the parties thereto, but seeks the benefit of the Statute of Frauds as to himself, and must show fraud.

APPEAL from the District Court, Fifth Judicial District, San Joaquin County.

Bogart was the owner of a team, consisting of horses, wagon, and harness. He was at the same time indebted to Fisher & Fisher in the sum of about six hundred dollars. Bogart met one Nichols at Virginia City, in the State of Nevada, to which place Bogart had been hauling goods from Sacramento. This was in June, 1864. Bogart informed Nichols that he was afraid his creditors would attach his team if he returned to Sacramento; and it was then agreed between him and Nichols that a fictitious sale of the property should be made to Nichols in order to keep it out of the hands of creditors; and such sale having been made, the team was taken back to Sacramento. At Sacramento, Nichols made a sale of the property to Thornton, the plaintiff. The Fishers having commenced suit against Bogart, procured an attachment and attached the property in the hands of Thornton, who then commenced this action against Hook, the Sheriff, to recover damages.

On the trial the plaintiff called as a witness A. Borland, and proved by him that in July, 1864, he was living on a ranch, and the plaintiff then placed in his possession the property in controversy, and that while he was keeping it for the plaintiff it was attached and carried away by the Sheriff.

On cross examination of this witness, the defendant's attorney asked him if he knew where Thornton procured the possession of the property, and if he knew whether before the property was put in his possession by Thornton it had ever belonged to Bogart, or was ever in his possession. The Court, on objection of the plaintiff's attorney, refused to allow the questions to be put. The plaintiff then rested.

The defendant then introduced testimony upon the issues

and upon the question whether Thornton, when he purchased of Nichols, knew of the fraud on the part of Bogart and Nichols; and on this point the testimony was conflicting. There was also testimony as to the consideration paid by Thornton, the plaintiff.

The defendant asked the Court to give the jury the following instruction, which was refused; to which refusal he excepted:

"If the jury find from the evidence that Thornton procured his title to the property from Nichols, and that Nichols procured his title and possession fraudulently from the Bogarts, and with the intent to defraud their creditors, that then the said creditors would have the legal right to follow and attach the property in his hands, except he has proved to the satisfaction of the jury that he was a *bona fide* purchaser for a valuable consideration, and the burden of proof to show that part is on him. To constitute Thornton a *bona fide* purchaser for value, he must not only have had no notice of the fraud of Nichols in procuring the possession, but he must also have paid some new consideration for the property prior to his discovery of said fraud. If Thornton only relinquished an antecedent debt due him from Nichols of five hundred dollars as a part payment of the purchase, and if he did not actually pay Borland the one hundred dollars which he assumed to pay for Nichols, until after the discovery of the fraud by which Nichols acquired possession, that then neither or both of said pretended payments are sufficient in law to clothe Thornton with the character of a *bona fide* purchaser for valuable consideration, and they will find a verdict for the defendant."

The plaintiff recovered judgment, and the defendant appealed from an order denying a new trial

The other facts are stated in the opinion of the Court.

*D. W. Perley,* for Appellant.

29

Plaintiff did not prove any title whatever, except bare possession. He invoked the presumption of law, that he who had possession was the owner. On putting in evidence his alleged possession, he put his whole title before the jury. There can be no doubt whatever that the right of cross examination extended to everything pertaining to his claim to the property. How he obtained his possession, who from, what he paid for it, when it was delivered to him, under what circumstances, and particularly if this property had ever belonged to Bogart, or was ever in his possession—and if so, where he parted with it, and upon what consideration— it is only by allowing this reasonable latitude that any case of fraud can ever be unravelled. (*Jackson* v. *B. R. and A. W. and M. Co*, 14 Cal. 18; *Harper* v. *Lamping*, 33 Cal. 631.)

The Court should have given the instruction asked by the defendant. The first question of law which arises upon this instruction is this: If the jury found that the title of Nichols was fraudulent as against Bogart's creditors, and that Thornton procured the possession from Nichols, how could Thornton protect himself against the right of these creditors to follow and attach the property in his hands? Why does not the general rule apply to him which is contained in the maxim, " *Nemo plus juris ad alium transferre potest, quam ipse habet?* " The reason is this: An exception is made in favor of a *bona fide* purchaser without notice, and those who seek to escape from the consequences of the rule must bring themselves within the exception. (*Basset* v. *Nosworthy*, 2 Lead. Cases in Eq. 72, 80.) The burden of proof devolved on the plaintiff. As soon as it was seen that he had procured the possession from a fraudulent vendee, he could not, protect his title except by proving that he was a *bona fide* purchaser for valuable consideration, actually paid and consummated prior to the discovery of the fraud. (2 Lead. Cases in Eq. 63, 90, 91, 92, 93, 95, 125, 126, and authorities there cited.) The burden of proof upon this point must necessarily rest upon the plaintiff.

*George W. Tyler*, for Respondent.

It was not error to refuse to allow defendant's attorney to cross examine witnesses Borland and Greer as to matters unconnected with their direct examination. Plaintiff questioned these witnesses as to the actual possession of Thornton only. As to where he got his possession, or how, or when, or who owned the property before, no questions were asked. Defendant had a right to cross examine fully as to the nature of Thornton's possession, whether actual or constructive, and perhaps, as to how long he had been in possession, and all the circumstances surrounding his possession at the time; but certainly not as to where or of whom he got his possession, or whether Bogert ever owned the team or not. These were matters necessary to be proved to sustain the second defense set up in the answer. They were a part of defendant's case, and in order to prove them, defendant was very properly required to make the witnesses his own.

The instruction asked by defendant was clearly not law, as a whole. If Thornton had become bound to pay Borland by a contract, he could not rescind; it was the same as though the money was actually paid at the time. Nichols owed Borland one hundred dollars. Nichols, Borland, and Thornton being together, Borland agrees to take Thornton for the debt, and release Nichols. Thornton agreed to pay the debt, and gave his note for the money. This was a novation, and Thornton could not get rid of paying the money, nor could Borland ever after have collected it from Nichols. If this be so, then the instruction asked was clearly not law, and the refusal to give it was not error. (Hilliard on Sales, 332, Sec. 7; *Sargent* v. *Sturm*, 23 Cal. 362.)

By the Court, SANDERSON, J.:

It is not always easy to determine the precise point beyond which a cross examination should not be allowed to proceed. The general rules upon the subject are plain enough; but

the difficulty lies in the just application of them to given cases. Thus it is well settled that a witness cannot be cross examined, if objection is made, except as to facts and circumstances connected with matters testified to by him on his direct examination. But it is sometimes difficult to say whether a given fact or circumstance is connected with a matter previously stated by him in the sense of this rule. If the broadest latitude be given to the rule, a cross examination might extend to the whole case, for all the facts of a case may be said to have a certain connection with each other. This rule is, therefore, qualified by another, which is equally well settled. It is, that a party who has not yet opened his own case cannot be allowed to introduce it by a cross examination of the witness of his adversary. In most cases, doubtless, guided by these rules, a Court will be able to prescribe with accuracy the limits to a cross examination; yet it frequently happens that both sides of a case stand, in part, upon common territory, or are founded in part upon the same or cognate facts. In such cases it is impossible to adhere strictly to the one rule without violating the other, for the question put may apply equally to new matter and to matter already stated, or at least it may be difficult to decide whether it does or does not. Of this class of cases the present is an example. The questions put to the witnesses Borland and Greer, on cross examination, had they been allowed by the Court, would, doubtless, have elicited matter connected with the plaintiff's possession of the property in question, and therefore his title to it, within the meaning of the rule first noticed; but it is equally certain that the matter so elicited would have been connected with the defendant's case within the meaning of the rule last noticed. Where such are the conditions, the course to be pursued must inevitably be left to the discretion of the Judge below, and his ruling cannot be regarded as a legitimate subject for a bill of exceptions. (*Ellmaker* v. *Buckley*, 16 S. and R. 72; *Burke* v. *Miller*, 7 Cush. 547, 550; 1 Greenl. Ev., Secs. 445, 446, 447.)

The instruction which was asked for by the defendant, to the effect that if the sale from the Bogarts to Nichols was void as against the creditors of the former, the plaintiff's purchase from Nichols would be also void, unless it appeared that the plaintiff purchased without notice of the fraud in the sale from the Bogarts to Nichols, and for a valuable consideration; and that upon that question the burden of proof was upon the plaintiff; and further, that the relinquishment of an antecedent debt due from Nichols to the plaintiff, and a promise on the part of the plaintiff to pay a debt due from Nichols to Borland, evidenced by the plaintiff's note to Borland, unpaid at the time the property in question was seized by the defendant, did not constitute a valuable consideration, does not present the law of the case, and was therefore properly refused by the Court. The maxim, *nemo plus juris ad alium transferre potest, quam ipse habet,* which lies at the foundation of this instruction, has, as we conceive, no application to this case. Had Nichols become the purchaser from the Bogarts through fraudulent representations, which would have vitiated the contract between them and rendered it null and void, and afterwards sold to the plaintiff, the instruction would have been in point. No title would have passed from the Bogarts to Nichols by reason of the fraud, and the latter, therefore, could have conveyed no title to the plaintiff. Having no title, the plaintiff would be compelled to show an equity superior to the title, or yield the goods to the holder of the title. His right to the goods would depend, not upon the title, but upon the ground that he purchased without notice of the fraud of his vendor, and for a valuable consideration, in which case his right to the goods would be considered superior to that of the first vendor; for, where one of two innocent persons must sustain a loss, equity will cast it upon him who contributed to that result.

The conditions are different in the present case. As between the parties, the sale from the Bogarts to Nichols, and the sale from Nichols to the plaintiff, were both valid, and the title passed from the Bogarts to Nichols, and from

Nichols to the plaintiff. The defendant's claim is not, therefore, founded upon the ground that the title is still in the Bogarts, as in the case supposed, but upon a provision of the Statute of Frauds, enacted for the security and protection of creditors, which, as to them, annuls a sale which has been made, although good as between the parties to it, if it appears to have been made with a certain intent. Whoever seeks the benefit of this provision confesses, as the statute itself assumes, that a sale of the goods has been made, but alleges that the sale was fraudulent as against him, and, to entitle him to recover, he must make good his allegation; the burden is upon him. He alleges fraud, and must prove it, or the statute will not disturb the sale nor the Courts interfere. The doctrine advanced in the instruction, as to the necessity for a valuable consideration, and as to what is a valuable consideration, is equally out of place. The Statute of Frauds does not annul a sale in favor of creditors solely upon the ground that it was not founded upon a valuable consideration.

Judgment affirmed.

Mr. Justice CROCKETT expressed no opinion.