[No. 20311. In Bank. — November 1, 1887.]

## THE PEOPLE. RESPONDENT, *v.* LEE CHUCK, APPELLANT.

CRIMINAL LAW — MURDER — EVIDENCE OF HOSTILITY OF WITNESS — CROSS-EXAMINATION. — On the trial of a Chinaman for the murder of another Chinaman, the defendant, on the cross-examination of a witness for the prosecution, asked certain questions for the purpose of showing that there was a feud between two Chinese societies, and that the society of which the deceased and the witness were members was especially hostile to the defendant and to the society to which he belonged, and that the deceased and the witness, on an occasion when the two societies had met to arrange their controversy, had threatened the life of the defendant. The court excluded the evidence. *Held*, that the evidence was admissible on cross-examination, notwithstanding it might tend to prove some fact material to the defense.

ID. — EVIDENCE OF PREPARATIONS FOR SELF-DEFENSE. — On the trial, the evidence of the prosecution showed that the defendant at the time of the homicide was incased in a coat of armor, and was armed with several pistols. To explain this fact, the defendant, for the purpose of showing that he had reason to believe that his life was in danger, and that he had armed himself for his own protection, offered to prove that certain societies of which the deceased was a member, had threatened his life, and that he knew of the fact. *Held*, that the evidence was admissible.

ID. — INSTRUCTIONS — ADMISSION OF KILLING. — In a prosecution for murder, an instruction that the killing of the deceased was not disputed by the defense is erroneous, when no such admission on the part of the defendant was made on the trial, nor was involved in the theory of the defense.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*McAllister & Bergin, Lyman I. Mowry,* and *William A. Nygh,* for Appellant.

*Attorney-General Johnson,* for Respondent.

TEMPLE, J. — The defendant was convicted for the murder of Yin Yuen, who was killed at about noon on Washington Street, in San Francisco. The witnesses who

were present when the homicide was committed are
Chinese, and there is a wide discrepancy in their testi-
mony, although the evidence of all the witnesses on
either side harmonizes wonderfully with the testimony
of the other witnesses on the same side.

On the part of the prosecution it is made to ap-
pear that defendant, with several other Chinamen, was
standing on Washington Street when the deceased came
peacefully along, and just as he passed the defendant on
the sidewalk, defendant presented his pistol and fired;
that Yin Yuen instantly fell, and defendant again fired
at him, and thereupon the others who were standing
there, some five or six, commenced firing at the deceased,
who was lying helpless on the ground.   The defendant's
witnesses all state that some five or six Chinamen were
standing at the same point on Washington Street when
the defendant, with two other Chinamen, came along up
Washington Street.   As they passed the group, Yin
Yuen fired a shot at the defendant, who stepped into
the street and looked around.   As he did so, Yin Yuen
fired the second shot, and thereupon defendant and his
two friends drew their pistols and commenced firing, as
did also the other Chinamen who were with Yin Yuen;
that the two groups fired several shots at each other, and
that during the firing Yin Yuen fell.

On the trial, Chow Hin was the principal witness on
the part of the prosecution.   According to his own tes-
timony, he was in company with Yin Yuen, or imme-
diately behind him, walking along Washington Street,
at the time Yin Yuen was attacked and killed by the de-
fendant.   The defense attempted to show, on cross-ex-
amination of this witness, that he was hostile to the
defendant.

I will quote from the bill of exceptions sufficient to
show the nature of the controversy:—

" *Q.*—Who is the person who keeps that book?

" *The Court.*—What is the object of it?

"*Counsel for Defendant.*— The object is this, your honor: we are seeking to show the feeling of this witness, and the *animus* which he has in this prosecution. He is a member of the Bo Sin Sear Society. There has been a feud between that society and the Guy Sin Sear Society for a long time. The deceased was a member of the Bo Sin Sear Society. They had quarreled for two months previous to the shooting. They had been out to the cemetery together to settle their disputes, and gone through with certain ceremonies. Lee Chuck was out there; this witness was out there. They attacked Lee Chuck the day previous on Jackson Street. They also threatened Lee Chuck on the very day previous to this shooting that he should not leave. This witness is a member of that society. The deceased is another. We want to show his connection with the society; we want to show his previous quarrels. We want to show what his *animus* is. We want to show that this society has subscribed money to carry on this prosecution, and we want to show this man does not stand here as an impartial witness; that he stands here as a member of the Bo Sin Sear Society, with a bitter feud on the part of the society against the Guy Sin Sear Society, and against Lee Chuck as a member thereof. That the Bo Sin Sear Society has been indulging in threats against the Guy Sin Sear Society, the result of which was that Lee Chuck went and got a coat-of-mail, and armed himself with three or four pistols in order to protect himself, and was attacked on Washington Street, in this city. We have a right to show the *animus* of the witness, and show his feelings toward the defendant."

The objection that the evidence was incompetent, irrelevant, and immaterial was sustained by the court, and the defendant excepted.

The question was repeated in various forms with the same result. The last two questions, and the rulings, were as follows:—

" Q. — Did you and the deceased, two or three months before this shooting, go out to the cemetery as members of the Bo Sin Sear Society, and meet there Lee Chuck and certain members of the Guy Sin Sear Society? Did you go through there certain ceremonies, such as cutting a chicken's head, and trying to settle the feud between those two societies? Did you ·part in enmity, and did you and the deceased on that occasion make distinct threats against the life of Lee Chuck?

" *The Assistant District Attorney.* — The same objection,. your honor.

" *The Court.* — Same ruling and exception.

" *Counsel for Defendant.* — We shall except on part of ' the defendant.

" Q. — Did you and the deceased, representing the Bo · Sin Sear Society, with a party of other men, go out to · the cemetery two or three months before this shooting? ' Did you meet there Lee Chuck and a number of men representiug the Guy Sin Sear Society? Did you have · any angry controversy at that time? Did you and the · deceased both then make threats at Lee Chuck? Did the deceased then draw his pistol on Lee Chuck and . threaten to shoot him at that time?

" *The Assistant District Attorney.* — The same objection,. your honor.

" *The Court.* — Same ruling.

" *Counsel for Defendant.* — We except on behalf of the· defendant."

There may be some matters in the original offer which: would not be proper evidence on cross-examination, but · this cannot be said of the subsequent questions. It is. implied that there was a feud between two Chinese societies, and that the society of which the deceased and the witness were members were specially hostile to the defendant; and it was sought to be shown, in connection with this, that the deceased and the witness, when the two societies met to arrange their controversy, threatened

the defendant. This evidence was clearly admissible. It is no objection to such evidence that it would tend to prove some fact material to the defense, if it were also under the rules of evidence legitimate cross-examination.

The case of *Thornton* v. *Hook*, 36 Cal. 223, only sustains the proposition that the court, having a certain discretion to control the order in which testimony may be introduced, may sometimes refuse to allow cross-examination as to matters which would more properly be received as direct testimony from the party seeking to cross-examine. Here the object was to show that the witness was hostile. The defendant could not justly be compelled to recall and make the witness his own to do that. The court erred in sustaining the objection.

Since the case must be reversed on other grounds, it is not necessary to notice the unfortunate remark of the court, made while counsel for the defense was opening his case, tó the jury, further than to say that the line of defense there indicated seems to have been a proper one, and the judge was not justified in discrediting it in any way.

It appeared from the evidence of the prosecution that, at the time of the homicide, Lee Chuck was incased in a steel coat-of-mail, and was armed with four pistols. These were brought in and displayed before the jury. They were intended to have, and doubtless did have, great weight in convincing the jury that Lee Chuck had prepared himself for the deadly encounter in which Yin Yuen lost his life. To explain this fact, and to show that the defendant had reason to think his life in danger, and for that reason, and not to prepare himself to make a murderous assault upon the deceased, defendant put on a coat-of-mail and armed himself, the defense offered to show that the Bo·Sin Sear Society and another organization, of which Yin Yuen was a member, had threatened to take the life of defendant, and that defendant had been informed of the fact. This evidence was objected to as incompetent, and the objection was sustained.

This ruling cannot be maintained. The fact of the extraordinary armor worn by the defendant at the time of the homicide was important evidence for the prosecution. To refuse to permit the defendant to show that the preparation was for a different purpose, and for reasons which implied no intent to assault the deceased, was a denial of a most essential right.

It is claimed that the court erred in its charge to the jury. The first objection is stated in the bill of exceptions as follows:—

"The charge of the court to the jury in these words: 'It is not disputed by the defense that on the twenty-eighth day of July, 1886, Yin Yuen, the person named in the information, was shot and killed on that day, by the defendant,'—was an incorrect statement of facts made to the jury, and an incorrect statement of the position taken by the defense.

"Neither defendant or his counsel did ever admit on the trial of this action that the deceased, Yin Yuen, was killed on the twenty-eighth day of July, 1886, by defendant. The claim of the defense was, that on the twenty-eighth day of July, 1886, an affray was commenced on Washington Street, by Yin Yuen and his associates shooting at Lee Chuck and some two associates who were with him, and that in the course of said affray, so commenced by Yin Yuen, that deceased, Yin Yuen, was killed.

"That neither the defendant or his counsel, or either of them, in the course of the trial of this case, ever admitted that Yin Yuen was killed by Lee Chuck.

"This incorrect statement of fact to the jury in charging the jury was never subsequently corrected by the court in any further charge, or in any further observations made to the jury."

The statement fails to show any such admission on the part of the defense, and no such admission was involved in the theory of the defense. On the contrary, the theory of the defense, which was sustained by the testimony of

several witnesses, was, that the defendant and two others were walking peacefully along the street when they were surprised by shots fired by Yin Yuen; that thereupon they all three commenced firing, and were fired at by Yin Yuen and five or six others with whom Yin Yuen seemed to be associated. In this affray Yin Yuen was killed, but by whom did not appear. On the other hand, the theory of the prosecution was, that defendant shot deceased while he was going peacefully along from his work, and that Yin Yuen did not shoot at defendant, and that there was no affray at all, the shots all being fired at Yin Yuen by defendant and his partisans.

It is plain, therefore, that this assumption was not justified by the facts, and that it was favorable to the theory of the prosecution.

Other instructions are objected to, but we do not deem it necessary to discuss them. Some of them, if isolated from the others, are probably defective; but on the whole, we think the law was fairly presented on the points complained of. The cause is remanded and a new trial ordered.

SEARLS, C. J., SHARPSTEIN, J., McFARLAND, J., McKINSTRY, J., PATERSON, J., and THORNTON, J., concurred.