[Crim. No. 89. Fourth Appellate District.—July 31, 1933.]

THE PEOPLE, Respondent, v. JOHN SANDOW, Appellant.

A. P. Nelson for Appellant.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

TURRENTINE, J., *pro tem.*—Defendant was convicted of burglary and the appeal is from the judgments of conviction and order denying a new trial. It appears from the evidence that defendant resided at the home of one Mrs. Briney, who was the mother of one James Lankford. The defendant and James Lankford occupied the same room in the Briney home. Lankford testified that he and the defendant entered four different garages after night and that each took from the garages certain personal property which they took to the room which he and the defendant were occupying. Among other things that the witness and defendant took were a hack-saw and Stillson wrench. The defendant had a small sewing-machine motor which he told Lankford he obtained from one garage, stating there were other tools there and they went together to this garage and got the tools. At no time did they have permission to enter the garages or obtain the property. James Lankford is an admitted accomplice. ▪ It was proper to prove the *corpus delicti* by the accomplice. (*People* v. *Richardson,* 161 Cal. 552, 563 [120 Pac. 20]; *People* v. *Frazer,* 80 Cal. App. 464, 468 [252 Pac. 633].) Defendant attacks the judgments on (a) errors in instructions to the jury; (b) insufficiency of the evidence to support the verdicts, which is a claim that the accomplice was not sufficiently corroborated; (c) errors in admission of evidence.

▪ In corroborating the story told by the accomplice, evidence was offered of the following facts: (a) A portion of the stolen property was found in the room occupied by defendant and the accomplice. (b) That he moved some of the property from his room to the home of his own mother, which was in another part of town. (c) That some of the property was placed in the basement of the house belonging to his mother. (d) That a certain hack-saw was taken by the defendant from his room to his mother's place. (e) That when arrested and asked about this hack-saw he said that it belonged to his sister. (f) When defendant was on the stand he stated that he never made such statement respecting the hack-saw and that his sister did not purchase nor own it. (g) That he had the sewing-machine motor around the home of Mrs. Briney and offered to sell it to a person by the name of McIntyre. (h) That when Mrs. Briney

asked him where he got the motor, defendant said he got it down the street. After his arrest he made an escape from the officers and fled, and on the stand the defendant had denied having moved the tools to his mother's house and denied telling Mrs. Briney that he took them to his mother's house and denied that he had ever seen the sewing-machine motor. We think that this evidence, independent of and in no way dependent on the testimony of the accomplice, sufficiently connects, or tends to connect, the defendant with the commission of the crime to satisfy the requirements of Penal Code, section 1111, and the rule of corroboration as laid down in the case of *People* v. *Yaeger*, 194 Cal. 452, 473 [229 Pac. 40].

On cross-examination, defendant's counsel asked Mrs. Briney: "You are not particularly friendly to Mr. Sandow are you, Mrs. Briney?" to which she replied: "A. As far as being friendly I am friendly but then we never did get along very good—he has a couple of children by my daughter but was never married to her." Defendant's counsel moved to strike the last sentence as a voluntary statement of the witness without the issues of the case and on the ground that it was incompetent, irrelevant and immaterial and not called for by the question, which motion was denied. This he assigns as reversible error. We are of the opinion that when a question is asked, the answer to which naturally calls for a state of mind, and the purpose of which is to draw inferences of bias, prejudice or motive from the answer, that generally, evidence which may counteract or justify such inferences is admissible. This principle which we announce seems to have support in *People* v. *Johnson*, 106 Cal. 289 [39 Pac. 622]. In that case a police officer had testified for the prosecution that he had taken quite an active part in the defense. In rebuttal he was asked his reason for the interest and stated that on investigation he believed the defendant innocent. The answer was on motion stricken out. On page 293 the court said: "The prosecution having proven that the witness had an interest in the result of the litigation for the purpose of weakening the effect of his testimony, we see no valid reason why opposing counsel had not the right to show generally what that interest was for the purpose of counteracting the effect of the former evidence."

Counsel for defendant asked Mrs. Briney, a witness for the prosecution, certain questions in laying a foundation for her impeachment, as follows:

"Mr. Nelson (To Witness): Are you acquainted with Genevieve Lan Franco? A. I am. Q. Do you remember some time the last part of February, 1932, of having a conversation with her, *at your home* in your bedroom, at which time you and she were present and no one else? A. We might have, she stayed at my place at that time, lived there. Q. And in which you stated in substance that you would like to see Jack Sandow back in prison, that he was always butting into your affairs, and you would do anything you could to send him back, or that in substance? A. I did not. Q. Never made such a statement? A. No."

It was established elsewhere in the evidence that the witness at the time of the crimes and trial was residing at 202 West Washington, and the term "at your home" may have referred thereto. Thereafter in due course, defendant called Mrs. Lan Franco for the purpose of impeaching Mrs. Briney, and she was asked:

"Q. Now, did you, some time in the month of February, the latter part of February, in 1932, did you ever have a conversation with Mrs. Briney relative to the defendant, Jack Sandow? A. Yes. . . . Where did that conversation take place? A. It took place at 801 North Ross, Santa Ana, at her home, in the bed room. . . . Q. Now what was said by Mrs. Briney at that time, relative to the defendant, Jack Sandow? Mr. Kaufman: Just a moment, we object to that on the ground that it is too remote, no proper foundation having been laid for it. Mr. Nelson: The foundation has certainly been laid, because I asked the witness as to time, place, those present and if the conversation, which will be testified to, was in substance had. How can I lay any better foundation? Mr. Davis: If my memory is right, Mr. Nelson asked the witness Mrs. Briney if this conversation took place in her bed room at 202 West Washington. This is the first witness that has mentioned 801 North Ross. The Court: I don't think this is impeaching a conversation that you laid the foundation for, Mr. Nelson. Mr. Nelson: I would like to recall Mrs. Briney, if the Court please. The Court: Very well. Mr. Nelson: Maybe she can answer right from there. The Court: You may recall her to the stand.

564

Mr. Kaufman: This is your witness now. The Court (to Mr. Nelson): She is your witness if you call her. Mr. Nelson: I just want to lay my impeaching foundation. The Court: Very well, you may call her to the stand, but you are making her your witness. Mrs. Margaret Louise Briney again resumes the stand, Mrs. Lan Franco being withdrawn by Mr. Nelson. Mr. Nelson (to Mrs. Briney): Q. Mrs. Briney, I asked you with reference to a conversation which you had with Mrs. Lan Franco, in which I am laying a foundation. I asked if you had such a conversation at your home in 202 West Washington Street. Now, I will ask you the same question and ask you if you had such a conversation with her at 801, at your home at 801 North Ross Street? A. No, I did not. Mr. Nelson (To Witness): That's all. Mr. Nelson: Mrs. Lan Franco, you may resume the stand. Mrs. Jennie V. Lan Franco thereupon resumes the stand for further direct examination by Mr. Nelson. Mr. Nelson (To Witness): Q. Now, I will ask you to state the conversation. Mr. Kaufman: At this time, Your Honor, we object, no proper foundation laid on the ground that this conversation, if the conversation was had, was too remote; on the further ground that counsel cannot impeach his own witness. This woman you put on the stand, Mr. Nelson, is now your witness. Mr. Nelson: She was recalled for the purpose of correcting my cross-examination. She is not my witness in any sense of the word. Mr. Kaufman: The Court advised you she was your witness. The Court: Yes, the Court said she testified as to a conversation on Washington Street, and you had a right to lay a foundation to anything she testified to, to impeach her which had been testified to on her direct examination. As to North Ross Street, a conversation, the Court said, 'if you put her on, you put her on as your own witness'. Mr. Nelson: I recalled her, if the Court please, simply for the purpose of correcting the location. The Court: I understand, but that wouldn't be cross-examination, there was nothing said to her about North Ross Street. Sustained. Mr. Nelson (To Witness): That's all.''

■ While the impeaching question is not in proper form, this record discloses that the court ruled that he would not permit the impeachment of the witness regardless of the form of the question and it would have been useless, almost

a contempt of court, for defendant's counsel to attempt to frame further questions along this line, in view of the ruling. We do not think that defendant made the witness, Mrs. Briney, his witness, when he recalled her for the purposes indicated, regardless of the comment of the court to that effect. (*People* v. *Lee Chuck*, 74 Cal. 30 [15 Pac. 322].) It is to be particularly noted that in the question to Mrs. Briney, the conversation was laid at her home, and in the question to Mrs. Lan Franco it was at her home at 801 North Ross Street. It is only to reference elsewhere in the record that we find that the home of Mrs. Briney was 202 West Washington. The probabilities are that she had moved from one address to the other, and the location of the conversation at her home in the bedroom is definite enough in itself to lay the proper foundation.

The evidence sought to be obtained was admissible.

" ' "It is elementary law, supported by all authority, that the state of mind of a witness as to his bias or prejudice, his interests involved, his hostility or friendship toward the parties, are always proper matters for investigation, in order that truth may prevail and falsehood find its proper level. If the inner workings of that mind are actuating his testimony, and the workings of that mind are brought forth to the light and held up in full view before the jury, results will be obtained much more in accord with truth and justice than though the witness' testimony is weighed and measured by his words alone. . . . " ' " (*People* v. *Pantages,* 212 Cal. 237, 258 [297 Pac. 890, 899].)

The elementary rules of cross-examination have been recently stated by the United States Supreme Court in the case of *Alford* v. *United States*, 282 U. S. 687 [51 Sup. Ct. 218, 75 L. Ed. 624], and among other rules lays down the following:

"Cross-examination of a witness is a matter of right. . . . Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them . . . In this respect a summary denial of the right of cross-examination is distinguishable from the erroneous admission of harmless testimony. . . .

"The trial court cut off *in limine* all inquiry on a subject with respect to which the defense was entitled to a reasonable cross-examination. This was an abuse of discretion and prejudicial error."

While these and other rules in the Alford case were applied to a different state of facts, the fundamental reasoning is the same in that the defendant was denied the right to put on evidence, which all the authorities hold he has a right to produce, and on the ground that he was impeaching his own witness, which we have indicated is in no sense tenable.

It remains to determine whether or not this error has in the instant case resulted in the miscarriage of justice. To determine this matter we have given very careful consideration to the entire transcript of the evidence and have arrived at the conclusion that the proof of the guilt of the defendant is established beyond a reasonable doubt. His own testimony is so inherently improbable as to, in itself, make us feel that it was deliberately false. Having arrived at this conclusion, we feel that the judgments must be affirmed in accordance with the requirements of section $4\frac{1}{2}$ of article VI of the Constitution.

The judgments and order appealed from are affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 28, 1933.

Langdon, J., dissented.