[Crim. No. 372.   Fourth Appellate District.—December 10, 1938.]

THE PEOPLE, Respondent, v. TOMMY RICE, Appellant.

G. Vernon Brumbaugh for Appellant.

U. S. Webb, Attorney-General, and Bayard Rhone, Deputy Attorney-General for Respondent.

GRIFFIN, J.—The defendant was charged in an information with the crime of grand theft, alleged to have been committed as follows: That on or about the 12th day of March, 1938, in the county of Orange, he did wilfully, unlawfully and feloniously take and carry away certain personal property, to wit, one 800-foot bait net of the value of $300 lawful money of the United States, the personal prop-

erty of Lawrence Fisher. On the date of the trial an amended information, including a charge of prior conviction of a felony, was filed against him. He entered a plea of not guilty to the theft charge and denied the prior conviction. Thereafter and during the trial, the district attorney moved to amend the description of the bait net in the amended information by deleting therefrom the figures ''800'' and interlining in their stead the figures ''1080'' so that the description would read ''1080-foot bait net''. The motion was granted and it was so amended without objection. The trial then proceeded and the court, sitting without a jury, found the defendant guilty of the offense charged. After denying a motion for a new trial, judgment was pronounced. From this judgment the defendant appeals.

The testimony may be briefly summarized as follows: On March 11, 1938, Lawrence Fisher owned a fish bait net. On the evening of that day he left the net in the center of a street approaching Lido Isle in Newport Beach. The next morning when he returned the net was gone. In the afternoon of that day Fisher, with three other members of his fishing crew, went to a pier in Santa Monica. Standing near the end of the pier were Tommy Coltrup, Alonzo Whyte and appellant, Tommy Rice, engaged in a conversation with another man. When Fisher and his party walked past the group to the end of the pier, the man to whom Coltrup, Whyte and Rice were talking drove off in a truck and the three separated. Coltrup started down the pier but changed his mind and came back to Alonzo Whyte's coupe which was parked at the end of the pier a few feet from where they had been standing. Whyte went to his automobile and Rice disappeared. Fisher jumped on Whyte's car and in the rear of this car found half of his bait net. The other half was found in Tommy Coltrup's car which was parked on a main street in Santa Monica. Coltrup and Whyte were arrested by some police officers who were present, and they were subsequently charged with grand theft. They pleaded guilty to the charge and later testified as witnesses in the present case. Generally speaking, their testimony was to this effect:

That Tommy Coltrup, Alonzo Whyte and Tommy Rice were working as fishermen upon the boat Erm II; that on the 11th day of March, 1938, while on this boat, Rice said he

knew where he could get rid of a bait net in Santa Monica, and he suggested that all of them steal Fisher's bait net, that Rice didn't like Fisher "to well"; that Whyte and Rice went in Whyte's car and Coltrup went in his own car to the place where the net was left; that Coltrup went over first and cut the wings off the net; that half of the net was placed in Whyte's car and half in Coltrup's car; that they took the net to Whyte's sister's home in Long Beach and left it there and then returned to Newport Beach; that the three went after the net the next morning and took it to Santa Monica, Rice riding with Whyte; that Coltrup parked his car up town a few blocks from the pier and rode with Whyte and Rice; that Whyte drove his car out on the pier and parked it near a truck; that they all got out of the car and Rice talked to a man who was near the truck, about buying the net; that Whyte saw Fisher and his crew coming and said: "We better get out of here"; that Whyte and Coltrup went over to the car and Rice left them.

The manner of his leaving was described by the witness Fisher in his direct examination as follows:

"Q. Now as you approached what did they (Coltrup, Whyte and Rice) do? . . . A. As we went up, they turned around and they all three started to leave. Tommy Coltrup started to go down off the pier and suddenly changed his mind when he saw Alonzo Whyte, and got in the coupe and backed it up, and they started to swing out to go down the pier, and Tommy Coltrup changed his mind suddenly and decided to go back and get in the coupe, but by the time he got back, I was standing on the running board and got the engine stopped. Q. What did Tommy Rice do? A. I saw him make a run and that's the last I saw. I don't know where he went to or anything about it."

On cross-examination he stated:

"Q. Now you say you saw Tommy Rice run away, is that correct? A. I wouldn't say. I saw him run. Where he went to, I don't know. Q. All right, which way did he run? A. When I turned around, I saw someone go down, that is on the side of the pier there, and Tommy at that time had his hair shaved, and he was the only one of the three that had his hair shaved. A head without any hair is what I saw going down there. Q. Going down where? A. Down the pier. Q. Going back towards town? A. No, at one side

of the pier. Q. Which side of the pier? A. When those three fellows started to run, I saw Tommy Coltrup and I also saw the bald hair going towards some steps off the side there, and from then on I paid no attention to any of them. My main object was to recover my net and I went and jumped on the car and stopped the motor . . . Q. Now when did you see Tommy Rice run? A. When we turned around they was more or less scattering of them and those three fellows left, and the man that was in the truck that they were talking to, he drove on off the pier.''

The above evidence is in corroboration of the testimony of the accomplices. One of the accomplices, Whyte, testified as follows:

''Q. Now, did Tommy Rice try to run off the end of the pier when you saw Mr. Fisher? A. I thought he run down on the lower deck of the pier.''

The accomplice Coltrup testified:

''Q. Now what did Tommy Rice do? A. I just saw him, he says, 'Jiggers, here comes Fisher', and he was away and I didn't see him after that.''

Fisher testified that he paid $300 for the net, second hand, during the fall of 1937, and that it was still worth $300. Coltrup, called on behalf of the appellant, testified that in his opinion the value of the net was between $175 and $250. Other witnesses placed the value ranging downward as low as $100.

The principal point involved in this case is whether there is sufficient evidence to corroborate the testimony of the accomplices, Whyte and Coltrup, under the provisions of section 1111 of the Penal Code. It seems quite obvious from the transcript before us that other witnesses could have been called to further connect the appellant with the crime charged. However, these three facts stand out as evidence established by corroboration. First, appellant's association with the accomplices the morning after the net was stolen approximately 70 miles from the place where it was taken; second, his presence near, or possession of the stolen property, and his endeavor to dispose of it the day following the theft at a place far removed from the place where the net was taken; and third, his flight at the time of the arrest of the accomplices.

The rule relative to the evidence necessary to corroborate the testimony of accomplices may be found in *People* v. *Yeager,* 194 Cal. 452, 473 [229 Pac. 40], where the court holds:

''It has been held that to corroborate an accomplice the evidence need not establish the actual commission of the offense, nor extend to every fact and detail covered by the statements of the accomplice, or to all the elements of the offense, nor prove that the accomplice has told the truth. The corroborative evidence must tend in some slight degree, at least, to implicate the defendant. While it need not be strong, more is required by way of corroboration than mere suspicion. It is sufficient if the corroborating evidence tends to connect the defendant with the commission of the offense, though if it stood alone it would be entitled to little weight. It is not necessary to corroborate the accomplice by direct evidence. If the connection of the accused with the alleged crime may be inferred from the corroborating evidence in the case it is sufficient.''

In the case of *People* v. *Sandow,* 133 Cal. App. 559 [24 Pac. (2d) 521], this court had before it a similar question. The defendant there, as in the instant case, was in possession of some stolen property. Soon after his arrest he made an escape from the officers and fled. The evidence showed that a portion of the stolen property was found in the room occupied by defendant and the accomplice and that some of it was removed to the home of defendant's mother. When arrested he stated one article belonged to his sister but later denied that statement. He offered to sell a stolen motor, saying he got it down the street. It was held that there was sufficient evidence, independent of the testimony of the accomplice, to support the verdict.

The case before us is not dissimilar, with respect to corroborative evidence, from the facts in the case of *People* v. *Armstrong,* 114 Cal. 570 [46 Pac. 611], where it appears that a horse was stolen by one of three accomplices who were rather intimate prior to the theft. The defendant, who was charged with the theft, fled from the district by a circuitous route and after being overtaken, expressed astonishment at being accused of committing the theft. In affirming the judgment of conviction the court stated:

"We think the facts here stated tended strongly to corroborate the testimony of Barlow to the effect that the horse was stolen as the result of a conspiracy for that purpose between himself, Morgan, and defendant; in which case it was not important whether defendant or Barlow—as the latter claimed—was the person who tarried at the common rendezvous while the other conspirators led the animal from its owners' corral.''

■ It is well established that possession of stolen property may be sufficient corroboration to warrant a conviction upon the testimony of an accomplice. (*People* v. *Williams*, 17 Cal. App. (2d) 122 [61 Pac. (2d) 813]; *People* v. *Ciani*, 104 Cal. App. 596 [286 Pac. 459]; *People* v. *Melson*, 84 Cal. App. 10 [257 Pac. 555]; *People* v. *Bettencourt*, 64 Cal. App. 243 [221 Pac. 403]; *People* v. *Braswell*, 103 Cal. App. 399 [284 Pac. 709].) It must be observed, in connection with the possession of the stolen net, that it was not actually on the person or in the manual possession of the appellant. It is quite obvious that it could not have been. The net was of such size that it had to be cut in two pieces in order to be transported in a passenger automobile. However, it was shown that Rice had accompanied the accomplices to the Santa Monica pier in an endeavor to sell the article and that the three men had joint possession of the stolen article at the time the accomplices were arrested. To be in possession of stolen property one need not have it in his manual possession or actually on his person. Such possession may be joint or individual, and two or more persons may be in possession where they have the power to control and the intent to control jointly. (*State* v. *McHenry*, 207 Iowa, 760 [223 N. W. 535].)

■ It is well established that flight, either from the scene of a crime or at the time of arrest, is sufficient to connect the accused with the offense. (*People* v. *Nikolich*, 93 Cal. App. 356 [269 Pac. 721]; *People* v. *Mazzola*, 99 Cal. App. 682 [279 Pac. 211].)

It has been held that corroboration need not be by direct evidence, but the entire conduct of the defendant may be looked to for corroborating circumstances and if, from those circumstances, his connection with the crime may be fairly inferred, the corroboration is sufficient. (*People* v. *Taylor*, 70 Cal. App. 239 [232 Pac. 998]; *People* v. *Nikolich*, *supra*;

*People* v. *Davis,* 135 Cal. 162 [67 Pac. 59]; *People* v. *Taber,* 13 Cal. App. (2d) 27 [55 Pac. (2d) 1189]; *People* v. *Martinez,* 19 Cal. App. (2d) 599 [66 Pac. (2d) 161].) Under the facts of this case, we are of the opinion that there was sufficient evidence as a matter of law to satisfy the requirements of section 1111 of the Penal Code.

The appellant next contends that there was not sufficient evidence to sustain a finding that the bait net was worth in excess of $200. It will be observed that there was merely a conflict in the evidence as to the value of the bait net, which was resolved by the trial court against appellant. Under such circumstances this court will not disturb the finding. (*Donato* v. *Lopopolo,* 20 Cal. App. (2d) 409 [66 Pac. (2d) 1256].)

The appellant next objects to the ruling of the trial court in permitting the amendment to the information by interlineation and substitution of certain figures after the trial was commenced without the defendant again being arraigned nor a plea entered. It is contended that an amended information supersedes all former pleadings and has the same effect and should be treated as an original information. (Citing *People* v. *Moody,* 69 Cal. 184 [10 Pac. 392].) It will be noticed that this amendment merely struck out the figures "800" and substituted the figures "1080" in describing the length of the net. This amendment was made after the owner of the net testified that it was a regulation bait net, with two wings, an apron and a sack, a lead line, and a cork line: that there was a distance of 1080 feet around the cork line and about 800 feet around the lead line. After this testimony was given, the deputy district attorney moved to amend the information by interlineation of the figures "1080" in place of the figures "800" which were stricken out, so that the description then read "1080-foot bait net". The court then directed an inquiry to the attorney for the appellant as follows: "Any objection?" to which he replied: "No objection". The court then ordered the amendment to be made and proceeded with the trial of the case without objection. Appellant cannot now with good grace raise this question on appeal for it is well settled that where one has assented to or recognized the validity of matters or proceedings not constituting fundamental error, he may not complain thereof on review where the errors are not prejudicial

(5 C. J., sec. 227). The particular portion of the description of the net, i. e., the length in exact footage, as alleged in the information, was not material to the sufficiency of the charge, and we see nothing in this point to justify a new trial of the action. (*People* v. *Myers*, 1 Cal. App. (2d) 620 [37 Pac. (2d) 191] ; *People* v. *Cuff*, 122 Cal. 589 [55 Pac. 407].)

The appellant also objects to the introduction into evidence of the testimony of the accomplices given at the preliminary hearing. At the time the matter was called for trial the accomplices were not available as they were then on the high seas. When this was made known to the court their testimony given at the preliminary hearing was read into the record with the consent of counsel for appellant. However, it should be stated that during the course of the trial a recess was taken over the week-end. During this time the two accomplices had been apprehended and ordered brought into court for the apparent purpose of clearing up some of the evidence offered by appellant as to certain conversations between the accomplices claimed to have taken place while they were confined in jail with a certain prisoner who testified as a witness for appellant. On the Monday following the week-end recess the accomplices gave their testimony personally in open court. It covered many of the facts related in the transcript of their testimony already read into the evidence. Appellant argues that it was error for the trial court to allow the witnesses for the prosecution to reiterate their testimony under the guise of rebuttal evidence. (*People* v. *Van Ewan*, 111 Cal. 144 [43 Pac. 520].) It is to be noted that the trial was conducted before a judge sitting without a jury. No objection was made at the time this testimony was sought to be introduced, although it is true that after the district attorney had asked a few questions, appellant objected to any further questioning on the ground that the testimony was not proper on rebuttal. The court overruled the objection. Under the circumstances as related it cannot be said that the court erred in bringing the accomplices before the court to testify or that the reception of their testimony was prejudicial. (*People* v. *Dykes*, 107 Cal. App. 107 [290 Pac. 102] ; *Unruh* v. *Nelson*, 212 Cal. 130 [297 Pac. 888] ; *People* v. *Grider*, 10 Cal. App. (2d) 287 [51 Pac. (2d) 881] ; *People* v. *Henry*, 23 Cal. App. (2d) 155 [72 Pac. (2d) 915].)

We have carefully examined the entire record and conclude that appellant's contentions are without merit.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.