[Crim. No. 8674. Fourth Dist., Div. One. May 17, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE MILLS, Defendant and Appellant.

**COUNSEL**

Appellate Defenders, Inc., under appointment by the Court of Appeal, Jeffrey K. Jayson and Stephen J. Perrello, Jr., for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen and Steven V. Adler, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STANIFORTH, J.**—Defendant George Mills was convicted, after jury trial, of lewd and lascivious conduct on a child under the age of 14 years (Pen. Code, § 288). Proceedings were suspended and Mills ordered examined pursuant to Welfare and Institutions Code section 6300 et seq. He was found not to be a mentally disordered sex offender and returned for sentencing. The trial court granted him three years probation conditioned inter alia upon 120 days custody in the county jail. Mills was required (with concurrence of Mills' counsel) to register as a convicted

sex offender pursuant to Penal Code section 290 and further Mills was required not to associate with minors under the age of 18, nor frequent places where such minors congregate unless in the presence of responsible adults.

Substantial evidence supports the jury verdict. Mills, after consuming a quantity of liquor, fondled the private parts, attempted sexual intercourse, with a seven-year-old female. This was accomplished through verbal threat, "If you don't take your panties off, I'm going to whoop you," and physically restraining her when the child attempted to leave.

Mills' prime contention on appeal is that his registration as a sex offender required of him, pursuant to section 290 of the Penal Code, constitutes cruel and/or unusual punishment in violation of the California and federal Constitutions; that such registration requirement violates the equal protection clause, constitutes an impingement on his constitutional right to travel and his right to privacy as embodied in the California and federal Constitutions. He further asserts the condition requiring he not associate with minors under the age of 18, etc., infringes upon his right of freedom of association and movement. Lastly, he contends trial court errors in failure to instruct *sua sponte* on specified areas of law.

As bar to Mills' principal thrust here the People advance this threshold contention: The People assert there is no constitutional issue for this court to review for Mills failed to object, to raise, the issues concerning the now-objected-to conditions of probation before the trial court. The record reflects his attorney assented to these conditions of probation. Further the facts asserted to support Mills' contentions are to be found in his brief on appeal, not in the record of this case.

■ "It is elementary that the function of an appellate court, in reviewing a trial court judgment on direct appeal, is limited to a consideration of matters contained in the record of trial proceedings, and that 'Matters not presented by the record cannot be considered on the suggestion of counsel in the briefs.' " (*People* v. *Merriam,* 66 Cal.2d 390, 396-397 [58 Cal.Rptr. 1, 426 P.2d 161].) (See also *People* v. *Siegenthaler,* 7 Cal.3d 465, 469 [103 Cal.Rptr. 243, 499 P.2d 499].)

■ Where, however, the newly advanced theory presents only a question of law arising from facts which are undisputed, appellate review is authorized. (*Roberts* v. *Roberts,* 241 Cal.App.2d 93, 98 [50 Cal.Rptr.

408]; *Tyre* v. *Aetna Life Ins. Co.,* 54 Cal.2d 399, 405 [6 Cal.Rptr. 13, 353 P.2d 725].) The Evidence Code section 353 requirement of timely and specific objection before appellate review is available is not a universal prohibition. As pointed out by the Assembly Judiciary Committee comment following Evidence Code section 353: "Section 353 is, of course, subject to the constitutional requirement that a judgment must be reversed if an error has resulted in a denial of due process of law." ■ We conclude unless the error is fundamental, so gross in character as to result in a denial of due process, Mills cannot in good grace here raise the question. This rule has greater applicability where a defendant has assented to or recognized the validity of matters or proceedings. (*People* v. *Rice,* 29 Cal.App.2d 614, 621 [85 P.2d 215].)

Mindful of these rules we defer their application pending examination of Mills' varied contentions Penal Code section 290 is unconstitutional as applied in this case. Penal Code section 290 requires a person convicted of certain sexually related offenses or who has been adjudged to be a sexual psychopath to register with the police in the city where he temporarily or permanently resides. Each change of address of a registrant must be reported within 10 days. Failure to comply with the registration requirement is a misdemeanor. The section applies automatically when a person is convicted of one of the enumerated offenses. It imposes a lifelong requirement of registration and reregistration absent a court order releasing the registrant from the penalties and disabilities of his conviction under Penal Code section 1203.4 (*People* v. *Taylor,* 178 Cal.App.2d 472, 477 [3 Cal.Rptr. 186]) or the issuance of a certificate of rehabilitation under Penal Code section 4852.01 et seq.

■ The fundamental legislative purpose underlying section 290 is to assure persons convicted of such a crime as molestation of children shall be readily available for police surveillance at all times. The Legislature has deemed such persons likely to commit similar offenses in the future and upon this basis the registration is required. (*Barrows* v. *Municipal Court,* 1 Cal.3d 821, 825-826 [83 Cal.Rptr. 819, 464 P.2d 483].) Mills' charges of unconstitutionality of section 290 face this threshold hurdle: ■ A presumption of constitutionality attends on Penal Code section 290. "[T]he validity of enactments will not be questioned 'unless their unconstitutionality clearly, positively, and unmistakably appears.'" (*People* v. *Wingo,* 14 Cal.3d 169, 174 [121 Cal.Rptr. 97, 534 P.2d 1001].)

Courts should tread lightly when approaching matters within the unique province of the Legislature. The definition of crime and the

determination of punishment are foremost among those matters that fall within the legislative domain. (*People* v. *Bauer,* 1 Cal.3d 368, 375 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].)

"The choice of fitting and proper penalties is not an exact science," conceded the Supreme Court in *In re Lynch,* 8 Cal.3d 410, 423 [105 Cal.Rptr. 217, 503 P.2d 921], "but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible." (*Ibid.*)

The purpose or necessity for the sanctions imposed by Penal Code section 290 is to be discerned initially by the Legislature.

"Its purpose may be rooted in tradition rather than deliberation; may be more or less realistic, more or less debatable. . . . Presented with a rational basis for the choice, the courts should hesitate to call the penalty cruel or unusual." (*In re Maston,* 33 Cal.App.3d 559, 562 [109 Cal.Rptr. 164].) Mills assails the legislative decisions underlying section 290 by unsubstantiated data set out in his brief for the first time on appeal. On this basis, Mills asks us to assume this primary assumption—sex offenders generally are not recidivists.

Mills next attacks the legislative assumption compulsory registration of known sex offenders protects society by the process of making the convicted sex offender more readily available to police surveillance. This court is not prepared to accede to either of Mills' undocumented and generalized contentions. These are, at best, most debatable points. These arguments should be addressed to the Legislature.

Mills next asserts the person required to so register carries an "ignominious badge" for a lifetime (*In re Birch,* 10 Cal.3d 314, 321-322 [110 Cal.Rptr. 212, 515 P.2d 12]); that registration as a sex offender has de facto punitive aspects about it cannot be doubted.

A person convicted of one of the specified sex offenses and required to so register suffers a multitudeness of disabilities in addition to the shame and ignominy of being so publicized. Such registration and requirements to reregister severely limits a person's freedom of movement, places him under continuous police surveillance. We would conclude the registration requirement is "one of the 'penalties and disabilities resulting from the

offense or crime of which [Mills] has been convicted.' " (*Kelly* v. *Municipal Court,* 160 Cal.App.2d 38, 41 [324 P.2d 990].)

However, conceding this premise does not give rise to the least suspicion cruel or unusual punishment is here imposed. This court should not so find and thereby interfere with the legislative function unless the statute prescribes a penalty "out of all proportion to the offense." (*Robinson* v. *California,* 370 U.S. 660, 676 [8 L.Ed.2d 758, 768, 82 S.Ct. 1417, 1425].)

A general description of that constitutional limitation on punishment would encompass penalties described as:

"[S]o disproportionate to the offense for which it is inflicted as to meet the disapproval and condemnation of the conscience and reason of men generally, 'as to shock the moral sense of the people.' " (*People* v. *Oppenheimer,* 156 Cal. 733, 737 [106 P. 74].)

"[S]o disproportionate to the offense committed as to shock the moral sense of the community." (*Workman* v. *Commonwealth* (Ky. 1968) 429 S.W.2d 374, 377 [33 A.L.R.3d 326].)

So disproportionate "as to shock the moral sense of all reasonable men as to what is right and proper." (*Application of Cannon,* 203 Ore. 629 [281 P.2d 233, 235].)

A punishment so disproportionate "as to shock the conscience of reasonable men." (*State* v. *Evans,* 73 Idaho 50 [245 P.2d 788, 792].)

The court will annul a punishment so disproportionate " 'as to shock the moral sense of the public.' " (*People* v. *Lorentzen,* 387 Mich. 167 [194 N.W.2d 827, 831].)

A penalty so disproportionate "as to be completely arbitrary and shocking to the sense of justice." (*Faulkner* v. *State* (Alaska) 445 P.2d 815, 819.) Concluded the Supreme Court in *In re Lynch, supra,* 8 Cal.3d 410, 424: "[T]he precise expression is not significant. It is essential only that in its actual operation the rule ensure that the power to prescribe penalties ' "be exercised within the limits of civilized standards." ' [Citations.] 'The State, even as it punishes, must treat its members with respect for their intrinsic worth as human beings.' [Citation.] Punishment which is so

excessive as to transgress those limits and deny that worth cannot be tolerated."

Whether a particular penalty is disproportionate to the offense committed is a matter of degree. Registration—viewed apart from the crime committed by Mills—is not by any stretch of reason or common experience to be placed in a category of severity with the imposition of the death penalty, or a prison term for petty theft or a prison term for acts subsequently declared noncriminal by the Legislature.

When viewed in conjunction with the specific offense for which Mills stands convicted, the registration requirement is not disproportionate as to shock one's moral sense. A requirement of registration of a person, albeit drinking, who attempts sexual penetration of a seven-year-old female does not raise the judicial shock eyebrow.

Defendant's own counsel agreed with the imposition of the now-challenged conditions of probation. He objected to the jail term, not to the registration or nonassociation with minors requirement. We do not approach the environs of the "limits of civilized standards."

The record here does not authorize, and the "penalty" when viewed in the light of Mills' offense, does not suggest our use of the "second technique" of comparison of the challenged penalty with the penalties prescribed in California for different more serious offenses.[1] (*In re Lynch, supra,* 8 Cal.3d 410, 426.)

Nor does the decision of the Supreme Court in *In re Birch, supra,* 10 Cal.3d 314, support Mills' contention of the disproportionality between the crime committed and the requirement of registration. In *Birch* the question was whether Birch's conviction should be set aside because he was not properly advised of the 290 registration requirement before entering his plea to a section 647 subdivision (a) Penal Code violation. Birch had urinated on a retaining wall at approximately 1:30 a.m. Two police officers observed his offense. In *Birch* the question of proportionality of the registration requirement to the section 647, subdivision (a) offense was not presented. While the Supreme Court makes reference to the "ignominious badge" resulting from registration, the court held, on

---

[1]Compare *In re Anders,* Crim. No. 20198, now pending before the California Supreme Court which involves Penal Code section 290 registration requirement arising out of a Penal Code section 647, subdivision (a) violation. Facially, the "second technique" would seem more appropriate in such juxtaposition of penalty for such lesser offense.

other grounds, Birch was entitled to have his judgment of conviction set aside. The court, however, did not prohibit the use of the section 290 registration requirement even on such a petty type offense to which Birch pled.

We are not concerned with a private urination at 1:30 in the morning in a semi-private area, but with a compelled sexual molestation of a seven-year-old female. If there be an ignominious badge imposed it would appear deserved. The same reluctance that may be contemplated in *In re Anders, supra,* Supreme Court Crim. No. 20198, to impose these requirements in section 647, subdivision (a) type offenses is not present in section 288 Penal Code species of offense before this court. We conclude there is no merit to Mills' assertion *Lynch* requires the declaration section 290, as applied to a section 288 offense, be unconstitutional.

It follows a fortiori the failure of Mills to object, to raise, to allow, the trial court to examine the matters he now urges upon us precludes appellate review. Our detailed examination of his complaints regarding section 290 leads us to the conclusion he is not within the exception to the rule against appellate review of matters not first raised, objected to, before the trial court.

■ Mills next asserts Penal Code section 290 registration requirements deny him equal protection of the law. The argument is without substance. Mills points to no suspect classification nor does he document any lack of a legitimate public purpose in attempting to identify potential recidivist child molesters. On the contrary, there appears a compelling state interest for the requirement in the case of child molesters to comply with registration requirements.

Mills' argument rests upon the claim there is an unequal treatment of various types of sex offenders; some sex offenders are registerable and others are not. This is a matter in the first instance for the state Legislature to determine the different degrees of gravity, of danger, to society from various types of sex offenses. Mills would draw on unsubstantiated matters raised here for the first time to support his claim his offense, heterosexual pedophilia, has one of the lowest recidivist rates of all sexual crimes. Again this is a disputable assertion best left with the Legislature for determination. Such an allegation does not give rise to a suspect classification (*D'Amico* v. *Board of Medical Examiners,* 11 Cal.3d 1, 16-17 [112 Cal.Rptr. 786, 520 P.2d 10]) where the distinctions made are

subjected to "strict scrutiny" by the court and the state must have a "compelling interest" to justify the distinction.

In substance, Mills' argument is merely a restatement of his cruel and unusual punishment argument. He repeats—sex offenders are not likely to be recidivists and therefore should not be subject to registration requirements. The fact there are some types of classes of sex offenses which are not made subject to registration does not per se require the finding there is a denial of equal protection. This may be based upon the legislative determination a particular type of offender does not recidivate or recidivates less; some offenses, although touching upon sexual acts, are not so directly concerned or related to the type of conduct which is repetitive, recidivist, in nature. In this final analysis, these are matters for consideration for the Legislature and should be addressed to that body. Here there is a rational basis for Penal Code section 290; to wit: a legitimate state interest in controlling crime and preventing recidivism by sex offenders. The fact all persons who in any way touch upon a violation of sexual mores or behavior are not included would indicate inferentially a legislative distinction is drawn. Mills does not carry his burden to establish the lack of rational relationship at least as to people who violate Penal Code section 288 and are thereby required to register.

Mills also argues the registration requirement deprives him of his right of free movement and of his right to privacy. This may well be true but any person who commits a violation of section 288, who physically molests, in a sexual sense, a seven-year-old child, has waived any right to privacy and may absolutely forfeit for a considerable time—the term prescribed by law—his right to travel. The argument is without merit.

We have noted the Legislature has the rational basis for the collection and maintenance of information concerning convicted sex offenders. The retention of such information, its public availability to a degree, invades Mills' right to privacy; yet it is proper and in the exercise of the state's fundamental right to enact laws which promote public health, welfare and safety. We find no merit in these contentions.

Mills contends he is subject to unconstitutional pressures in the requirement he not associate with any minor persons, female persons, under the age of 18, except in the company of proper adults. Here the condition has a direct relationship to the crime of which defendant is convicted and while it relates to conduct that is in itself not criminal, it

forbids conduct that is reasonably related to the prevention of future criminality on Mills' part. This may be an interference to a degree with Mills' freedom of movement and freedom of choice of places he goes and associates he keeps, yet this is totally in accordance with the concept as expressed in *People* v. *Mason,* 5 Cal.3d 759, 764-765 [97 Cal.Rptr. 302, 488 P.2d 630], which held a person by reason of his conviction of a public offense enjoys a reduced expectation of privacy. This condition serves the statutory aims of probation (Pen. Code, § 1203.01) and meets the standards as set forth in *In re Bushman,* 1 Cal.3d 767 [83 Cal.Rptr. 375, 463 P.2d 727].

■ Finally, defendant makes two contentions concerning failure of the court to first instruct *sua sponte* on the definition of admission and to view with caution such admission in relationship to his flight. (CALJIC No. 2.71.) Extrajudicial verbal admissions should be viewed with caution. However, flight is not an oral admission; it is an act; it is to be examined in the light of the instruction actually given by the court. CALJIC No. 2.71 has no application where the act, an admission so called, derives from the fact of flight.

Nor was the trial court required to give CALJIC No. 2.72 instruction *sua sponte.* Here again the species of admission referred to in CALJIC No. 2.72 is to the oral, the verbal type of admission, not the admission "that may derive from the fact of the act of flight." The trial court instructed the jury evidence of flight may only be considered if the flight occurs immediately *after commission* of a crime. From this it follows the crime must be proven independently from any question of flight. No trial court error appears in the failure of the court to give these instructions *sua sponte.*

Judgment affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 13, 1978. Mosk, J., was of the opinion that the petition should be granted.