[Ext. No. 64-267.   Second Dist., Div. Three.   Dec. 30, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIE WARNER HICKMAN, Defendant and Petitioner.

Frank C. Morales, under appointment by the District Court of Appeal, for Defendant and Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, J.— ▮ Petitioner, Willie Warner Hickman, seeks relief from his default in failing to file a notice of appeal in a criminal case within the 10-day period specified by rule 31(a) of the California Rules of Court.

In his petition Hickman alleges in substance that at the time of his sentence he had no knowledge of ''his constitutional right''—presumably his right to appeal; that he had no knowledge of the rules of appeal; that at no time did his appointed attorneys inform him of his constitutional rights; that he asked them to appeal; that they told him that this would be taking a grave chance and that, if the appeal was lost [won?], he could be resentenced ''for his life in the gas chamber''; that he was told an appeal would be filed and he would hear from his attorneys; that two years have passed and petitioner has not heard from them or seen them; that he was told by an officer at Chino to write a letter to the court entitled ''motion for appeal'' and that he did so on or about September 17, 1962; that this letter was mailed by the ''Counseling Center Officer'' and that he has never had a reply to that letter; that his two partners in crime who had appealed obtained reversals in the summer of 1964; that petitioner is a total layman in matters of law and had no choice but to believe that his appointed counsel would act in his best interests.

We appointed the Honorable Philip H. Richards, retired judge of the superior court, as referee to hear and to take testimony on four issues designated by us:

1. Within 10 days after rendition of judgment, what, if anything, did petitioner Willie Warner Hickman state to Mr.

Little or Mr. O'Neill in regard to an appeal? (The latter were petitioner's trial counsel.)

2. Within this 10-day period, what, if anything, did either Mr. Little or Mr. O'Neill state to the petitioner Willie Warner Hickman or do in regard to an appeal?

3. Did petitioner Willie Warner Hickman mail or cause to be mailed a letter to the superior court on or about September 17, 1962, in which he stated in substance that he desired to appeal from the judgment pronounced against him or in which he made any inquiry as to an appeal?

4. Are there any grounds for holding that petitioner Willie Warner Hickman is estopped or has waived his right to move for a delayed appeal at this time?

After a thorough hearing the parties filed briefs and the referee filed his report with this court. He recommends a denial of the petition and we concur.

The chronology of events which forms the background to the present situation is outlined by the referee in his findings. It is not in dispute and we set it forth by way of background.

"August 10, 1962 — Petitioner and his co-defendants, Robinson and Drivers, were found guilty of murder in the first degree.

"August 16, 1962—Petitioner and co-defendant Drivers penalty verdict fixed at life imprisonment and co-defendant [Robinson] penalty verdict of death.

"August 27, 1962—Petitioner and co-defendant Drivers sentenced to life imprisonment and co-defendant Robinson sentenced to death.

"August 27, 1962—Co-defendants Drivers and Robinson each filed Notice of Appeal.

September 11, 1962 — Petitioner arrived at Reception Guidance Center at California Institution for Men at Chino, California.

"January 4, 1963—Petitioner arrived at California State Prison, San Quentin, California.

"June 16, 1964—Supreme Court opinion in *People* v. *Drivers* and *People* v. *Robinson,* 61 Cal.2d 373 [38 Cal.Rptr. 890, 392 P.2d 970], filed reversing conviction of each with directions for new trial.

"October 8, 1964—Petitioner filed in this Court his Motion to File a Belated Notice of Appeal dated October 2, 1964."

On the disputed factual issues which we designated, the referee found: 1. Petitioner did not ask either Mr. O'Neill or Mr. Little about an appeal and said nothing to either gentleman in regard to an appeal within 10 days after rendition of judgment; 2. within that 10-day period neither Mr. Little nor Mr. O'Neill said anything to petitioner about an appeal, nor did either gentleman do anything in regard to an appeal; 3. petitioner did not mail or cause to be mailed to the superior court, or to any court, on or about September 17, 1962, a letter in which he stated in substance that he desired to appeal or make inquiry as to an appeal; 4. the delay of over two years between the judgment and the petition is unexplained by lack of knowledge of the necessity of filing a notice of appeal, by an impediment in filing such notice, by any reasonable expectation or belief that a notice had been filed or that an appeal was pending. Petitioner had no intention of appealing until nearly two years after the judgment.

The evidence before the referee on the first two issues was as follows:

Petitioner testified that immediately after being sentenced he asked O'Neill about an appeal. O'Neill said that he did not have any grounds for an appeal. As he was being taken to the "bull pen" he asked O'Neill to come and see him. He has not seen him since then. O'Neill also told him, on that occasion, that he should leave the case as it was, that he was lucky to get off with life and that he would get the gas chamber. He also asked Mr. Little to come and see him in the holding tank. He expected the attorneys to visit him but received no communication from either one. He asked his aunt to get in touch with the attorneys, but she also told him that he was lucky not to get the gas chamber. He was not certain whether that was her own opinion or something relayed from the attorneys.

Mr. O'Neill testified that he had no recollection of any such conversation as related by petitioner. His key answer is set forth in the footnote.[1] He saw petitioner at the county jail on one occasion, probably after the sentencing. Nothing was said about appealing. At no time did Hickman express

---

[1]"A. I have no recollection of any such conversation at that time. The atmosphere was somewhat charged in the courtroom, one person was given a death sentence and he was given a life sentence and the prisoners were separated, as I recall, from each other and I would say at this time at least I certainly did not discuss appeal with him nor did he with me."

dissatisfaction with the verdict. O'Neill never told him how to take an appeal.

Mr. Little positively denied having been requested to file a notice of appeal or that O'Neill was so requested in his presence. He denied making any promise to appear or hearing O'Neil make such a promise.

On the third issue, petitioner testified that after he arrived at Chino he asked his counselor, Mr. Shield, about an appeal and was told to write to the court. He claims to have done so, having by that time "figured" that his attorneys had not done anything since he had not heard from them. The letter in question was addressed "To the Courts" at the state building and in the body of the letter he asked the court how to go about appealing. He received no reply. This letter was mailed about seven days after he arrived at Chino. Thereafter he just waited and thought he would hear from the court or his attorneys. His counselor at Chino did not tell him about any time limit to file an appeal, nor had he ever heard of such a limit. Although he felt that his attorneys had not done anything he still hoped to hear from them because "it just takes time."

The mail records of Chino, which were introduced by respondent, negative the sending of any such letter and there is no contention that it was sent other than through the normal channels.

As to issue number four, waiver or estoppel, the referee found that there had been a waiver, relying on the statement in *People* v. *Garcia*, 63 Cal.2d 265 [46 Cal.Rptr. 324, 405 P.2d 148], that an unexplained delay of nearly a year from the time of sentence could constitute a waiver or estoppel. The referee took into account the length of time and the fact that the attempt to be relieved under rule 31(a) was admittedly prompted by the reversal of his codefendants' convictions.[2]

We have carefully read all the recent cases decided by the Supreme Court explaining the proper interpretation of rule

---

[2]It should be noted that petitioner testified that until a fellow inmate told him in September of 1964 that it was possible to file a "belated notice of appeal" he did not know of such a procedure; however, even accepting this testimony at face value, there is nothing in the record to contradict petitioner's earlier assertion that he did not know that there was a time limit on the right to appeal and the evidence therefore justifies an inference that during all the time while the appeal of his codefendants was pending, he thought that his own appeal could be started.

31(a)[3] and find nothing in any of them which would compel us to find differently than did the referee in whose findings we concur.

In *Garcia, Madrid, Krebs, Collier, Notz, Diehl, Flanagan, Johnson* and *Tucker* the Supreme Court agreed with the findings of its referee. In *Curry* the Supreme Court made its own fact finding on conflicting evidence. In *Casillas*, there was apparently no referee, but the evidence that defendant relied on his attorney's promise to appeal was undisputed.

*Jackson* and *Davis* are somewhat different. In *Jackson* the parties stipulated that the Supreme Court should decide the matter on the papers on file, without reference, argument or briefs. The Attorney General stipulated that the law was that the referee was required to resolve doubts in favor of the filing of the late notice of appeal and that unless a finding contrary to petitioner was compelled by the evidence, the relief should be granted. This stipulation went further than the law, which merely requires *reasonable* doubts to be so resolved. The Supreme Court then goes on to recite the facts before it, which indeed, as the court says, "clearly call for the exercise of the power," that is to say, the power to grant relief.

The facts in *Davis* were similar, except that there the trial attorney positively denied having promised to appeal. Undenied, however, were allegations of incarceration, ignorance and inability to communicate with counsel and a refusal by the sheriff to get Davis an appeal form, on the asserted ground that Davis' attorney would file the notice of appeal because he had promised to do so.

The testimony before us has to be evaluated in the light of the peculiar facts of this case which are set forth in the opinion in *People* v. *Robinson*, 61 Cal.2d 373 [38 Cal.Rptr. 890, 392 P.2d 970]. During the trial Hickman had taken the stand and, in effect, made a judicial confession of the crime.

[3]*People* v. *Garcia*, 63 Cal.2d 265 [46 Cal.Rptr. 324, 405 P.2d 148]; *People* v. *Davis*, 62 Cal.2d 806 [44 Cal.Rptr. 441, 402 P.2d 129]; *People* v. *Jackson*, 62 Cal.2d 803 [44 Cal.Rptr. 452, 402 P.2d 140]; *People* v. *Madrid*, 62 Cal.2d 602 [43 Cal.Rptr. 638, 400 P.2d 750]; *People* v. *Krebs*, 62 Cal.2d 584 [43 Cal.Rptr. 331, 400 P.2d 323]; *People* v. *Collier*, 62 Cal.2d 543 [43 Cal.Rptr. 1, 399 P.2d 569]; *In re Notz*, 62 Cal.2d 423 [42 Cal.Rptr. 321, 398 P.2d 593]; *People* v. *Curry*, 62 Cal.2d 207 [42 Cal. Rptr. 17, 397 P.2d 1009]; *People* v. *Diehl*, 62 Cal.2d 114 [41 Cal.Rptr. 281, 396 P.2d 697]; *People* v. *Flanagan*, 62 Cal.2d 63 [41 Cal.Rptr. 85, 396 P.2d 389]; *People* v. *Johnson*, 61 Cal.2d 843 [40 Cal.Rptr. 708, 395 P.2d 668]; *People* v. *Tucker*, 61 Cal.2d 828 [40 Cal.Rptr. 609, 395 P.2d 449]; *People* v. *Casillas*, 61 Cal.2d 344 [38 Cal.Rptr. 721, 392 P.2d 321].

No other motive than mercy at the penalty phase is suggested. The strategy worked and the punishment was fixed at life imprisonment. Viewed against this setting any thought of appealing appears to be far less likely than after the average trial. Thus the circumstances strongly bolster the testimony of the two trial counsel, who do not appear to be in any way hostile to Hickman.

Hickman's present counsel, who has so ably and successfully represented others in this type of proceeding, draws our attention to the fact that according to Hickman's testimony he was advised that a reversal and retrial could result in the death penalty. He also states that this advice was erroneous. (*People* v. *Henderson,* 60 Cal.2d 482, 495-497 [35 Cal.Rptr. 77, 386 P.2d 677].) The advice was correct, when allegedly given on August 27, 1962. (*People* v. *Grill,* 151 Cal. 592, 598 [91 P. 515].) *Henderson* was not decided until November 19, 1963. Mr. O'Neill was never asked whether or not he made such a statement to Hickman, but because of his denial of any discussion concerning an appeal, this was unnecessary.

In view of the referee's findings on the first two factual issues submitted to him, which we adopt, and which by a fair inference negative the alleged statement that a retrial might result in a death sentence, we find it unnecessary to decide whether a waiver of the right to appeal based on legal advice, correct when given but erroneous in the light of later decisions, can be effectively urged by the People. The factual parallel to *Fay* v. *Noia,* 372 U.S. 391 [83 S.Ct. 822, 9 L.Ed.2d 837] is obvious. Just as Noia declined to play Russian roulette with his life, so did petitioner, if his version of the facts is true. Noia discovered later that the federal courts would throw out his confession, which a state trial court had refused to do. Petitioner discovered *People* v. *Henderson, supra.*

The possible ramifications of a rule finding waiver in such a situation, particularly when viewed in the light of recent changes in the criminal law (*Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]; *Griffin* v. *California,* 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106]; *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]), the undoubtedly large number of inmates of penal institutions who failed to appeal because of legal advice, sound when given, that an appeal would be hopeless and the intricacies of our federal

system—see *In re Sterling,* 63 Cal.2d 486 [47 Cal.Rptr. 205, 407 P.2d 5]—tell us to abstain from expressing any views on that point.

Apart from the threat of the death sentence, which we find was not made by Mr. O'Neill, there is little or nothing in the record to suggest the absence of a waiver.

Hickman's own testimony concerning his frame of mind, while perhaps not irreconcilable with a finding against waiver, certainly points very strongly in that direction. The alleged sending of a letter from Chino—supposedly an inquiry on how to appeal—is difficult to reconcile with any belief that his attorneys had done anything and his complete inaction until after the reversal in *People* v. *Robinson, supra,* strongly suggest waiver. He himself testified that he knew of no time limits on the right to appeal.

Of course, Hickman stands strongly impeached not only by the circumstances, the timing of his petition for relief, the attorneys' denial of any request to appeal, but also by the records showing that no letter was mailed from Chino as claimed and Mr. O'Neill's recollection of having visited him in the county jail, although we know there is a possibility that the visit took place after verdict and before sentence.

We hereby adopt the referee's findings and approve of his recommendation to deny the requested relief.

The referee has informally advised us that he did not take an oath before performing his function. We set forth this fact solely for the sake of completeness. Although it may be customary for a referee to take an oath, we know of no rule of law which demands that he do so. He has served without pay.

Defendant's petition for relief under rule 31(a) is denied.

Shinn, P. J., and Ford, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied February 23, 1966.