[Crim. Nos. 3639, 3640. Fourth Dist., Div. Two. Mar. 24, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
STANLEY HARLE HURD, Defendant and Appellant.

(Consolidated Cases.)

866

**COUNSEL**

James B. Macdonald, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Jeffrey T. Miller and Jerry Krieger, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KAUFMAN, J.** — In two cases consolidated for trial (C-19487 and C-19753) a jury returned guilty verdicts against defendant on four counts of incest (Pen. Code, § 285), three counts of oral copulation (Pen. Code, § 288a), and one count of sodomy (Pen. Code, § 286). Mentally disordered sex offender proceedings were had and terminated; defendant's application for probation was denied, and he was sentenced to prison for the term prescribed by law on each count, all sentences to run concurrently.

Defendant appeals from the judgment in each case, contending that

(1) Penal Code, section 654 precludes separate sentencing as to a number of the offenses; (2) evidence of other crimes not charged was erroneously admitted; (3) the convictions are supported only by the uncorroborated testimony of an accomplice; (4) any legal distinction as to the necessity for corroboration as between the crime of incest on the one hand and the crimes of sodomy and oral copulation on the other hand is without rational foundation and violates defendant's right to equal protection of law; (5) the statutes proscribing incest, sodomy and oral copulation as applied in this case, constitute unconstitutional legislative invasions of defendant's right to privacy and constitute cruel and unusual punishment; (6) defendant's character witness was erroneously cross-examined; and (7) defendant was denied due process of law because of the inadequacy of his trial counsel.

The facts viewed most favorably to the People (*People* v. *Redmond*, 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]) are as follows:

The information in case C-19487 charged one count of incest (count I), one count of sodomy (count II), and one count of oral copulation (count III), all arising out of conduct of the defendant on October 10, 1967 at defendant's residence in Anaheim. The information in case C-19753 charged one count of incest (count II) and one count of oral copulation (count V), both arising out of defendant's conduct on August 14, 1967 at his residence in Anaheim and one count of incest (count IV) and one count of oral copulation (count VII), both arising out of defendant's conduct on April 29, 1967 at the Holiday Inn in Orange, and one count of incest (count III) arising out of defendant's conduct on March 11, 1967 at office "B" in Anaheim.[1]

The principal witness for the prosecution was the victim of the alleged sexual crimes, the defendant's 16-year-old daughter,[2] who came to California to live with him in December of 1966 after previously having lived with her mother in Utah for about seven years. With respect to the charged sexual offenses, she testified in substance as follows.

*Counts I, II and III, Case C-19487.* On October 10, 1967, she was a student in high school. When she arrived home that day at about 2:50 p.m., defendant was in the house, but no one else was there. Defendant told her to get undressed, and she did. They engaged in an act of oral copulation (count III) and then in sexual intercourse (count I). They then talked for about 15 minutes and then had anal intercourse (count II).

*Count III, Case C-19753.* On March 11, 1967 defendant and his daugh-

---

[1]Counts contained in the informations not listed above were dismissed.

[2]At the time of at least some of the offenses, she was 15 years old.

ter were living in Corona. On that date they went to defendant's office (office "B") on Manchester in Anaheim, where defendant first inserted a "coke" bottle filled with water into his daughter's vagina, removed it, and, thereafter, had sexual intercourse with her on the floor of the office.

*Counts II and V, Case C-19753.* On August 14, 1967, defendant and his daughter were moving some belongings from their residence in Corona to their new residence in Anaheim. When they arrived at the Anaheim residence, they were alone and engaged in an act of oral copulation "just before" engaging in an act of intercourse in the daughter's bedroom.

*Counts IV and VII, Case C-19753.* On April 29, 1967, defendant took his daughter to the Holiday Inn in the afternoon. Defendant registered and they went to their room. Defendant left, and the daughter went swimming in the swimming pool. Later that day, defendant returned and engaged in sexual intercourse with his daughter. They then dressed and went out to dinner, after which they returned to the room and engaged in an act of oral copulation and another act of sexual intercourse, following which they dressed and returned to their residence. A registration card from the Holiday Inn was introduced into evidence, showing the registration of defendant and his daughter at the Holiday Inn on April 29, 1967.

There were no witnesses, other than defendant and his daughter, to the foregoing occurrences. Defendant took the stand, and on direct examination he not only denied these specific acts but denied ever having feelings of sexual attraction towards his daughter, denied ever making sexual advances towards his daughter, denied ever having sexual intercourse with his daughter and denied ever having any sexual contact of any kind with his daughter. Defendant gave no explanation for the registration of him and the daughter at the Holiday Inn.

In its case in chief, the prosecution was permitted, over defendant's objection, to present evidence of other, uncharged sex offenses by defendant against his daughter for the limited purpose of showing the disposition of the defendant towards his daughter and the relationship between the parties.[3]

The daughter testified that on April 5, 1967, defendant drove her to the Ramada Inn in Riverside on his motorcycle, that she waited outside while defendant registered and that they thereafter went to a room in the Inn where they engaged in four acts of sexual intercourse over approxi-

---

[3] The limited purpose of this evidence was made plain to the jury by the arguments of counsel and the ruling of the court at the time of its introduction as well as a specific instruction on the limited purpose contained in the jury instructions as given the court.

mately a four-hour period. She testified that defendant thereafter left, telling her that he was, leaving to "go get somebody" and that he would be back in about an hour. When defendant returned he brought with him a Mr. Victor Ott, whom the daughter had never met before. The daughter was sleeping. Defendant woke her up and told her that he had someone outside who wanted to have sexual relations with her. Defendant helped her undress hurriedly and then went over and opened the door and invited Ott in. Thereafter Ott removed his clothing and got into bed with her, but "he didn't do anything. He was too drunk." About an hour and a half later, defendant returned and took Mr. Ott home.

A couple of weeks later defendant took his daughter to Mr. Ott's apartment where she and Ott had sexual intercourse while defendant watched from a closet. Defendant had slacks on when he entered the closet and had only undershorts on when he came out shortly after the daughter and Mr. Ott had completed the act of intercourse. Defendant and the daughter then engaged in sexual intercourse.

The daughter also testified that on May 7, 1967, defendant took her to suite "G" in an office building in Anaheim, which he was then using as his office, and that there defendant inserted a vibrator into her vagina and thereafter had sexual intercourse with her. She testified that defendant kept the vibrator, prophylactics and suppositories in the bottom of a couch in his office. The vibrator and a prophylactic were subsequently introduced into evidence, and Policewoman Wilson testified that she found these items in a couch which was identified as having been in defendant's office (suite "G").

The daughter further testified that on June 4, 1967, defendant and she again went to the Ramada Inn in Riverside, where defendant registered and that thereafter they engaged in sexual intercourse in the rented room. Records from the Ramada Inn were introduced showing that defendant registered for a room on that date.

Mr. Ott testified and substantially corroborated the testimony of the daughter with respect to the events at the Ramada Inn on the night of April 5, 1967, and at his apartment several weeks later. He said that he met. defendant at a bar and that defendant told him that "he had a girl at the Ramada Inn that was too much for him sexually" and that defendant drove him on defendant's motorcycle from the bar to the Ramada Inn. Upon arrival there, defendant took him to a room where the daughter was in bed and asked him if he wanted to go to bed with her. Defendant let Ott into the room and then left. Defendant returned in about 45 minutes and gave Ott a ride home.

Ott further testified that about two weeks later defendant and the girl came to his apartment, that he let them in and that defendant asked him if he "wanted to have sex with her." Thereafter, Ott and the girl engaged in sexual intercourse, during which defendant was "sort of peeking, looking out at us" from the closet. He said defendant entered the closet fully clothed and was naked when he emerged. Ott left the room, but shortly returned, and, on his return, he observed defendant and the girl having sexual intercourse. Ott did not find out until some time later that the girl was defendant's daughter.

Additionally, the following evidence was introduced tending to show that, after he was contacted by the police concerning his daughter, defendant fled the state.

On October 13, 1967, after the daughter had been removed from defendant's residence and placed in Juvenile Hall, Detective Sergeant Posey of the Anaheim Police Department, who had been investigating the case, had a telephone conversation with defendant in which he requested defendant to come to the police station immediately. Defendant replied that he could not come in at that moment, but he did agree to meet the officer at 8:15 Monday morning, October 16, 1967.

Defendant did not keep the appointment and did not communicate or attempt to communicate with the officer in any way. Instead, on October 15, 1967, defendant rented a 20-foot van from Hertz Corporation, placed some of his property therein and left the State of California, on October 16, 1967. At the time he rented the van, defendant told a Hertz employee that he intended to use it to move from Anaheim to a specific address in Downey and that he intended to return the van the evening of that same day. He left with Hertz a Phillips 66 credit card in lieu of a cash deposit and was to have paid cash for the rental upon its return and pick up his credit card. Instead, defendant drove the van to Las Vegas, Nevada, where he placed his property in storage and left the van parked at a motel. Hertz subsequently received a letter from defendant, having a return address in Kansas, informing Hertz of the location of the van. Defendant never did pay for the rental nor reclaim his credit card.

## Multiple Sentences

■ Relying upon *Neal* v. *State of California,* 55 Cal.2d 11 [9 Cal. Rptr. 607, 357 P.2d 839], and *In re McGrew,* 66 Cal.2d 685 [58 Cal.Rptr. 561, 427 P.2d 161], defendant urges that section 654[4] of the Penal Code

---

[4]This section provides in relevant part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an

was violated by his being separately sentenced for incest, sodomy and oral copulation as a result of the sexual activity on October 10, 1967 (counts I, II and III in Case C-19487); for incest and oral copulation as a result of the activity on August 14, 1967 (counts II and V in Case C-19753); and for incest and oral copulation as a result of the activity on April 29, 1967 (counts IV and VII in Case No. C-19753). Defendant's reliance is misplaced, and his contention cannot be sustained.

■ Literally, section 654 proscribes multiple conviction and punishment when a single act constitutes several distinct crimes. ■ By case law it is held that distinct acts may constitute a single act for purposes of the statute if all the acts were part of an indivisible course of conduct. (*In re McGrew, supra,* 66 Cal.2d 685; *Neal* v. *State of California, supra,* 55 Cal.2d 11.)

In *Neal* the defendant was separately sentenced for arson and attempted murder, but the arson was the means of perpetrating the crime of attempted murder, and the court set aside the arson conviction on the basis that ". . . . the arson was merely incidental to the primary objective of killing Mr. and Mrs. Raymond." (*Neal* v. *State of California, supra,* 55 Cal.2d 11, 20.) In that case the court specifically distinguished cases such as the present case, noting that "In *People* v. *Slobodion,* 31 Cal.2d 555, 561-563 [191 P.2d 1], however, we sustained convictions for sex perversion and lewd and lascivious conduct, even though both acts were closely connected in time and a part of the same criminal venture since the act giving rise to the lewd and lascivious conduct was separate and distinct and was not incidental to or the means by which the act of sex perversion was accomplished." (*Neal* v. *State of California, supra,* 55 Cal.2d 11, 20.) ■ In the case at bench, defendant's acts were in some instances closely connected in time and undoubtedly were a part of the same criminal venture, but there is no evidence that the oral copulation or anal intercourse were merely incidental to a primary objective of sexual intercourse. In fact, the anal intercourse on October 10, 1967, occurred after the sexual intercourse, and on April 29, 1967, the oral copulation occurred after the initial act of intercourse.

In *McGrew* the defendant was separately sentenced for burglary, two counts of rape and one count of oral copulation. The court held that the burglary was predicated upon the entry into the victim's home for the purpose of committing the sex offenses and that the separate sentences for burglary and the sex offenses were, therefore, violative of section 654. Finding that the burglary offense carried the more severe punishment, the

acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other . . . ."

court set aside the sentences for the sex offenses (*In re McGrew, supra,* 66 Cal.2d 685, 688-689), but the court did not determine whether separate sentences would have been proper on the sex offenses absent the burglary. They probably would have been. (See *People* v. *Hicks,* 63 Cal.2d 764 [48 Cal.Rptr. 465].)

Separate convictions and sentences for the offenses in this case were proper. (*People* v. Slobodion, 31 Cal.2d 555, 561-563 [191 P.2d 1]; *People* v. *Hicks, supra,* 63 Cal.2d 764, 766; *People* v. *Armstrong,* 268 Cal.App.2d 324, 326-327 [74 Cal.Rptr. 37].)

### *Evidence of Other Sex Crimes*

Relying upon *People* v. *Stanley,* 67 Cal.2d 812 [63 Cal.Rptr. 825, 433 P.2d 913], defendant contends that the court erred in admitting the evidence of the uncharged sex offenses by defendant against his daughter. *Stanley* is of no assistance to defendant. On the contrary, the guidelines and rationale set forth in that case fully support the admissibility of the evidence introduced in this case. The holding in *Stanley* was that the *uncorroborated* testimony of the victim that the defendant committed similar sex offenses with him and others was inadmissible when the only proof of the charged offenses was the uncorroborated testimony of the victim. In this case, the testimony of the victim as to the uncharged offenses was not uncorroborated, and was, in fact, fully corroborated by the testimony of Mr. Ott and the introduction of the physical evidence (the vibrator and prophylactic) found in the couch from defendant's office.

The court in *Stanley* repeated the familiar rule that evidence of other crimes is inadmissible if offered solely to prove criminal disposition or propensity on the part of the accused to commit the crime charged, noting that the evidence is then excluded because its probative value is outweighed by its prejudicial effect. (*People* v. *Stanley, supra,* 67 Cal.2d 812, 816.) The court noted that where the only prosecution evidence as to the charged offenses is the testimony of the complaining witness and the defense is a denial, the veracity of the witness as to the charged offenses is the ultimate issue, and the uncorroborated testimony of that same person as to other offenses is of no substantial aid to the trier of fact and may result in great prejudice to the accused. In other words, its probative value is outweighed by its prejudicial effect. (*People* v. *Stanley, supra,* 67 Cal.2d 812, 817.) The clear implication is that where, as here, there is substantial corroboration for the testimony of the complaining witness as to the other offenses, the probative value of such evidence is very great, because it is of substantial assistance to the trier of fact in determining the ultimate issue, the veracity of the complaining witness. (See *People* v. *Stanley, supra,* 67

Cal.2d 812, 817, citing *People* v. *Smittcamp,* 70 Cal.App.2d 741, 745-751 [161 P.2d 983].) Moreover, in *Stanley,* the court reaffirmed that in cases involving sex crimes "evidence of other not too remote sex offenses *with the prosecuting witness* is admissible to show a lewd disposition or the intent of defendant towards the prosecuting witness." (*People* v. *Stanley, supra,* 67 Cal.2d 812, 816 (italics added), citing *People* v. *Sylvia,* 54 Cal.2d 115, 119-120 [4 Cal.Rptr. 509, 351 P.2d 781], and referring to *People* v. *Kelley,* 66 Cal.2d 232, 240 [57 Cal.Rptr. 363, 424 P.2d 947].)

■ Although there may be some confusion as to when and under what circumstances evidence of the commission of uncharged sex offenses with *other victims* is admissible, where, as here, the other offenses were similar in nature and committed upon the same victim at a point close in time to the charged offenses and the evidence of the commission of the other offenses is not based solely on the uncorroborated testimony of the victim but is substantially corroborated, such evidence is admissible. (*People* v. *Kelley, supra,* 66 Cal.2d 232, 242-243; *People* v. *Stanley, supra,* 67 Cal.2d 812, 816-818; *People* v. *Sylvia, supra,* 54 Cal.2d 115, 119-120.)

### Uncorroborated Testimony of an Accomplice

Defendant contends that, as to the crimes of oral copulation and sodomy,[5] his daughter was an accomplice, (see *People* v. *McRae,* 31 Cal.2d 184 [187 P.2d 741]; and *People* v. *Cox,* 102 Cal.App.2d 285 [227 P.2d 290]) and that his convictions of these crimes are supported solely by her uncorroborated testimony.

It is unnecessary for us to determine whether the daughter was an accomplice to these offenses as a matter of law,[6] because we have concluded that, in any event, her testimony was not uncorroborated.

■ ■ Penal Code, section 1111 forbids conviction upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the crime. "Such corroboration may be circumstantial or gained from the defendant's admissions, statements, testimony or conduct as a witness. As the court said in *People* v. *Todd,* 9 Cal.App.(2d) 237 [49 Pac.(2d) 611]: 'Furthermore, evidence showing a consciousness of guilt, . . . may serve as a requisite corroborative circumstance, . . .' " (*People* v. *King,* 33 Cal.App.2d 538, 542 [92 P.2d 510], quoted by *People* v. *Andrew,* 43 Cal.App.2d 126,

---

[5]Being under the age of 18 years, the daughter could not as a matter of law be an accomplice to the crime of incest. (*People* v. *Jahn,* 99 Cal.App.2d 236 [221 P.2d 333]; *People* v. *Pettis,* 95 Cal.App.2d 790 [213 P.2d 731].)

[6]The jury was fully instructed on the law pertaining to accomplices and the need for corroboration of testimony of an accomplice.

129-130 [110 P.2d 459].) ██ It is well established that flight of the defendant (*People* v. *Rice,* 29 Cal.App.2d 614, 620 [85 P.2d 215]; *People* v. *Mazzola,* 99 Cal.App. 682, 684-685 [279 P. 211]; *People* v. *Nikolich,* 93 Cal.App. 356, 357 [269 P. 721]) and even silence of the defendant in the face of accusatory statements (*People* v. *Collins,* 4 Cal.App.2d 86, 87-88 [40 P.2d 542]) constitutes sufficient corroboration for the purposes of Penal Code, section 1111. ██ The facts hereinabove set forth disclose that, when defendant was contacted by the policeman investigating the case after his daughter had been taken to Juvenile Hall, defendant fled the State of California. Under such circumstances, defendant's flight constitutes an implied admission by conduct and affords an inference of consciousness of guilt, (Witkin, Cal. Evidence, (2d ed. 1966) p. 481) and constitutes sufficient corroboration under the section. (*People* v. *Rice, supra,* 29 Cal.App.2d 614; *People* v. *Mazzola, supra,* 99 Cal.App. 682; *People* v. *Nikolich, supra,* 93 Cal.App. 356; see also *People* v. *Wayne,* 41 Cal.2d 814, 822-823 [264 P.2d 547].)[7]

Additionally, the registration card from the Holiday Inn showing the registration by defendant for himself and his daughter, for which defendant offered no explanation, constitutes additional corroboration of the daughter's testimony. Standing alone, this evidence would probably not be sufficient corroboration under section 1111 (see *People* v. *Robbins,* 171 Cal. 466 [154 P. 317]), but when added to the facts and circumstances of defendant's flight, it is not insignificant.

Having concluded that there was sufficient corroboration, it becomes unnecessary to discuss defendant's contention that corroboration should also be required for conviction of the crime of incest and that any distinction as to the requirement for corroboration between these crimes is without rational foundation and violates the constitutional mandate for equal protection of laws.

### Right of Privacy and Cruel and Unusual Punishment

We fail to see, and defendant does not point out, how or wherein his

[7]The daughter's testimony was, of course, substantially corroborated by the testimony of Mr. Ott, and the introduction of the vibrator and prophylactic found in the couch from defendant's office, but the testimony thus corroborated related entirely to the uncharged offenses, and it has been held that corroboration of other offenses is not sufficient to meet the requirements of Penal Code, section 1111 because it does not itself "tend to connect the defendant with the commission of the offense" charged. (*People* v. *Cox, supra,* 102 Cal.App.2d 285, 287; *People* v. *Reynolds,* 26 Cal.App.2d 219, 221 et seq. [79 P.2d 150]; *People* v. *Singh,* 121 Cal.App. 107, 109 [8 P.2d 898].) Whether the rule of these cases should be applied to a case such as this where the principal reason for admitting the corroborated evidence of other offenses is to prove the veracity of the complaining witness (*People* v. *Stanley, supra,* 67 Cal.2d 812, 817; and *People* v. *Smittcamp, supra,* 70 Cal.App.2d 741, 745-751), we need not decide, having concluded that there was other sufficient corroborative evidence.

convictions constitute cruel and unusual punishment; and his argument that the statutes proscribing incest, sodomy and oral copulation as applied to the facts of this case constitute unconstitutional infringements by the state of his right of privacy is unmeritorious.

As acknowledged by defendant, similar contentions were rejected in *People* v. *Roberts,* 256 Cal.App.2d 488, 495 [64 Cal.Rptr. 70], and in *People* v. *Ragsdale,* 177 Cal.App.2d 676, 678-679 [2 Cal.Rptr. 640]. ▆▆ Defendant does not and could not cite any authority that the right of privacy constitutionally protected under the "penumbra" doctrine (see *Griswold* v. *State of Connecticut,* 381 U.S. 479, 483 [14 L.Ed.2d 510, 514, 85 S.Ct. 1678, 1681] extends to a father's sexual contact with his minor daughter. ▆▆ In the exercise of the police power, each state has the right to enact laws to promote public health, safety, morals and welfare. (*Lochner* v. *New York,* 198 U.S. 45, 53 [49 L.Ed. 937, 940, 25 S.Ct. 539, 541]; *In re Weisberg,* 215 Cal. 624, 627-628 [12 P.2d 446].) **(12)** Penal statutes proscribing illicit sexual contacts constitute a legitimate and proper exercise of that power. (See concurring opinions of Mr. Justice Goldberg and Mr. Justice Harlan in *Griswold* v. *State of Connecticut, supra,* 381 U.S. 479, 498-499, 505 [14 L.Ed.2d 510, 523-524, 527-528, 85 S.Ct. 1678, 1689, 1693].) ▆▆ The exercise of this power is a legislative function, and the courts do not sit as super-legislatures to determine the desirability or propriety of statutes enacted by the legislature. (*Griswold* v. *State of Connecticut, supra,* 381 U.S. 479, 482 [14 L.Ed.2d 510, 513, 85 S.Ct. 1678, 1680]; *People* v. *Ragsdale, supra,* 177 Cal.App.2d 676, 679.) ". . . ▆▆ [T]he making of unnatural sexual relations a crime is embedded in the history of the common law and finds its sanction in the broader basis of the settled mores of our western civilization." (*People* v. *Ragsdale, supra,* 177 Cal.App.2d 676, 679.)

### Cross-Examination of Character Witness

In his defense, defendant called as a character witness Father Martin C. Hiss. Father Hiss testified that he had known defendant about three and one-half to four years; that defendant was his tax accountant and that Father Hiss had been to see him six or seven times and had talked to him quite a few times over the phone; that he also had occasion to meet other people who knew defendant; that during the time that he had known Mr. Hurd he had formed an opinion about his character. He was then asked the following questions and gave the following answers:

"Q. Do you have an opinion of whether or not he is a man of good or poor moral character?

"A. From my observation, he is of good moral character, honest, upright, has done nothing to indicate otherwise.

"Q. During the time you have known Mr. Hurd, have you formed a personal opinion of his character for honesty and veracity?

"A. Yes, I have.

"Q. What is that opinion?

"A. I feel that he is honest and fair."

Over objections made outside the presence of the jury that they were excessively prejudicial to the defendant and improper cross-examination, Father Hiss, on cross-examination, was asked the following questions and made the following answers:

"Q. Well, now, with respect to your previous testimony about your opinion of Mr. Hurd, you said that you, in your opinion, he had a good moral character, and that in your opinion, he was honest and fair?

"A. Yes.

"Q. Father Hiss, have you heard that in October of 1945 Mr. Hurd was arrested for violation of the Federal Dyer Act, that is, taking a stolen auto across the state line knowing it to be a stolen automobile?

"A. I think I was told that by Mr. Tucker on the telephone.

"Q. Have you heard that he was arrested for Grand Theft, Auto, in January of 1946 at Hermosa Beach, California?

"A. I saw that in some papers that his wife had since he was in jail. I didn't know that before that. I didn't know that in my contacts with him, but I understand he was a juvenile at that time.

"Q. That was in 1946 that you understand he was a juvenile?

"A. Well, I thought he was a juvenile. I just took it for granted. I heard the case was dismissed or something.

"Q. Have you heard that in 1947 in May in Las Vegas, Nevada, he was arrested for a violation of the Dyer Act, that is, moving an automobile across the state line knowing it to be a stolen automobile, and in addition to that, the Mann Act, a Federal act, outlawing transporting a woman across the state lines for an immoral purpose?

"A. No, unless Mr. Tucker mentioned that. I can't recall that.

"Q. Have you heard that in January, 1950, he was arrested for Grand Theft Auto and attempted burglary in Orange, California?

"A. I think Mr. Tucker told me about that.

"Q. Have you heard that in 1952 in February he was arrested for armed robbery in Tallulah, Louisiana?

"A. Again, Mr. Tucker told me.

"Q. Have you heard he was arrested for theft by the use of fraudulent checks in April of 1960 in Kingman, Arizona?

"A. No, I didn't hear that.

"Q. Have you heard that he was arrested for forcible rape of one Lucile Barrett in November, 1965, in Downey, California?

"A. No.

"Q. One further thing, have you heard that he was arrested for child beating in 1968?

"A. If that refers to his daughter, he told me something about that."

Although the questions were phrased in the "have you heard" form approved in *People* v. *Marsh*, 58 Cal.2d 732, 745 [26 Cal.Rptr. 300, 376 P.2d 300]; defendant urges that this cross-examination was improper because Father Hiss had not testified to the *reputation* of the defendant but had given his *opinion* as to the character of defendant. Defendant also contends that the rumors of the specific acts asked about are not inconsistent with the character traits testified to by Father Hiss on direct examination. any event, the question concerning the 1952 arrest for armed robbery in (*People* v. *Marsh, supra,* 58 Cal.2d 732, 745.) He further urges that in Louisiana was improper because defendant was subsequently pardoned for that offense in Louisiana.

The rationale for permitting the prosecution to cross-examine a defendant's good-character witness as to whether or not he has heard rumors or reports of defendant's arrest or conviction of other offenses inconsistent with the character trait testified to, is that such cross-examination tests and exposes weaknesses in the witness' knowledge of the reputation. (*People* v. *Marsh*, 58 Cal.2d 732, 745 [26 Cal.Rptr. 300, 376 P.2d 300]; *People* v. *Ogg,* 258 Cal.App.2d 841, 845 [66 Cal.Rptr. 289]; Witkin, Cal. Evidence (2d ed. 1966) pp. 1121-1122.) Defendant argues that that rationale does not apply where, as here, the good-character witness does not testify to defendant's reputation but states his opinion of defendant's character.[8]

---

[8]In general, prior to enactment of the California Evidence Code in 1965, a defendant's good-character witness could not state his opinion of the character trait based upon his own experience and observation of the defendant but could only testify as to defendant's reputation with respect to the character trait. (*People* v. *Gordan,*

Although defendant's argument is not without some logic, we cannot agree with his conclusion that it was error to permit the cross-examination of Father Hiss in the "have you heard" form.

■■■ Obviously, the opinion of a good-character witness must have some basis, and the prosecution must be permitted to cross-examine to test that basis and bring into question the validity of the opinion. (See Witkin, Cal. Evidence (2d ed. 1966) p. 1120.) In many instances, the opinion of a personal acquaintance will necessarily be based upon a mixture of personal knowledge or observation of the defendant and a knowledge of his reputation in the community. ■■■ Just so, in the case at bench, the foundation for Father Hiss' opinion was his personal acquaintance with defendant and his having met other people who knew defendant. Under these circumstances, it would not seem inappropriate that the prosecution be permitted to test the witness' knowledge, including his knowledge or lack of knowledge of well founded rumors of defendant's misconduct inconsistent with the character traits to which he testified.

Father Hiss testified that in his opinion defendant was of "good moral character" and that he was "honest," "upright" and "fair." Obviously, all of the rumors of the specified acts asked about on cross-examination would be inconsistent with good moral character; most would be inconsistent with honesty and uprightness, and the rumor of child beating would be, at least, inconsistent with fairness. There was no error in this regard.

■■■ With respect to the report of defendant's arrest in Louisiana and the alleged pardon, Father Hiss was not asked whether or not defendant had been convicted or, even, whether in fact he had been arrested. He was asked whether he had heard of defendant's arrest. As noted previously, the purpose of such a question is to test the witness' knowledge. In the absence of bad faith on the part of the prosecution (see *People* v. *Kramer,* 259 Cal.App.2d 452, 466-467 [66 Cal.Rptr. 638]), the question concerning a report of defendant's arrest would not seem improper even if defendant had subsequently been pardoned.[9] Moreover, the record before us does

---

103 Cal. 568, 573-574 [37 P. 534]; Witkin, Cal. Evidence (2d ed. (1966) p. 293.) Sections 1100 and 1102 of the Evidence Code, however, make opinion evidence admissible.

[9]The good faith of the prosecutor is not in question in this case. Before any of the questions complained of were asked, the court, outside the presence of the jury, had a discussion with the prosecutor and defendant's attorney in which the prosecutor disclosed the questions he proposed to ask Father Hiss and disclosed to the trial judge and opposing counsel the documentary reports from which he obtained his information, all in accordance with *People* v. *Eli,* 66 Cal.2d 63, 79 [56 Cal.Rptr. 916, 424 P.2d 356], and *People* v. *Kramer, supra,* 259 Cal.App.2d 452, 466-468. The trial judge indicated that he would not permit several proposed questions but that other proposed questions were permissible, in good faith and not unduly prejudicial to

not demonstrate that defendant was, in fact, pardoned. On redirect examination, Father Hiss testified that he had heard that defendant had received a full pardon for the offense in Louisiana, but that does not prove the fact.

### Inadequacy of Counsel

Defendant was represented at the trial by the public defender. He contends that his trial attorney did not understand the law pertaining to cross-examination of character witnesses and that his asking Father Hiss his opinion of defendant's "good or poor moral character" opened the door to the prosecution's cross-examination of Father Hiss on defendant's arrest record. Also, defendant has attached to his brief his declaration under penalty of perjury in which he states that after the cross-examination of Father Hiss, defendant's trial counsel decided not to call any more witnesses for the defense.[10] He also has attached a photocopy of a check for the rent of office "B" bearing an issuance date of March 20, 1967, which was not introduced into evidence and which he claims would have shown that it was physically impossible for him to have committed the offense in that office charged in count III of Case No. C-19753 on March 11, 1967.

Both the declaration and the check are, of course, outside the record, and should have been presented in a motion for new trial so as to be included in the record on appeal; but, in any event, it is obvious that defendant has not sustained his burden of showing inadequate representation and that his contention must be rejected.

The charge of inadequacy of counsel "must be supported by more than speculative arguments." (*People* v. *Durham,* 70 Cal.2d 171, 192 [74 Cal. Rptr. 262, 449 P.2d 198].) ■■■ To sustain such a charge the defendant must show that the conduct of trial counsel reduced the trial to a "farce or sham" (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]) or resulted in the deprivation of a "crucial defense" (*In re Williams,* 1 Cal.3d 168, 175 [81 Cal.Rptr. 784, 460 P.2d 984]; *People* v. *Pineda,* 253 Cal.App.2d 443, 471 [62 Cal.Rptr. 144]). "In the heat of a trial, defendant's counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings," and "Except in rare cases an appellate court should not attempt to second-guess trial counsel." (*People* v. *Brooks,* 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383].)

---

defendant. These are matters resting largely in the judicial discretion of the trial court. (*People* v. *Kramer, supra,* 259 Cal.App.2d 452, 467; see also *Michelson* v. *United States,* 335 U.S. 469, 480 [93 L.Ed. 168, 176, 69 S.Ct. 213, 221].) It is noteworthy that Father Hiss testified that he had heard most of these rumors.

[10]The names of these additional witnesses and the substance of what their testimony would have been is not disclosed.

In light of the record, it is difficult to understand defendant's argument that his trial attorney did not understand the law pertaining to cross-examination of character witnesses. Trial counsel made an articulate and reasoned argument to the trial court that Father Hiss could not be cross-examined on defendant's arrest record because he had testified as to his own opinion of defendant's character and not defendant's reputation, which is precisely defendant's argument on appeal. It is clear from the report of this argument that counsel understood the law very well. His decision to call Father Hiss and ask him the questions he did was obviously a calculated risk, a matter of trial tactics which we do not second-guess. Faced with the trial court's ruling on the allowable cross-examination, his decision not to call other witnesses was probably quite sound, but it was, in any event, a question of trial tactics. Trial counsel's failure to seek introduction of the rent check was likewise a matter of trial tactics. In the first place, the check does not prove defendant did not have possession of office "B" on March 11, 1967. It only tends to show that on March 20, 1967 he paid his rent. The rental agent had testified that he had rented office "B" to defendant "In the first half of the month of March" 1967 and that defendant occupied that office approximately one month commencing in the first half of March 1967. Counsel may well have decided that, inasmuch as the ultimate issue was credibility, he did not want to create a conflict between the testimony of defendant and the presumably disinterested rental agent. Furthermore, the check bears the stamped words "Not sufficent funds," and in view of its limited probative value, counsel may not have wished to bring this matter to the jury's attention.

We conclude that defendant had the assistance of competent counsel and that he was not deprived of due process of law.

The judgment is affirmed.

Kerrigan, Acting P. J., and Tamura, J., concurred.